Otis C. Fuller *v.* Sarah Ann Weaver, in her own right, and Peter Weaver, her Husband, Appellants.

*Deed—Description—Boundaries—Monuments on ground—Ejectment.*

As a rule the intention of parties to a deed must be ascertained from their written expression, and only in rare cases from testimony dehors the instrument.

Where a line marked on the ground is found by the undisputed testimony to agree with the courses and distances of the dividing line as called for in the deed of both parties, such line must control, and the intention of the grant must be taken to convey the land according to the actual survey, and no different intention can be given to such grant.

A father divided his land amongst his children and conveyed it to them by deeds. The dividing line in the deeds to two of his daughters was " Beginning at a post, thence south seventy-three degrees east one hundred and twenty-five rods to a stone." Surveyors testified that along this line were a number of marked trees. The surveyor who divided the land and made the deeds nineteen years before, testified that the grantor's intention was that the line should end at an iron pin. He also testified that the marking of the trees must have been done by his axmen without his authority, and on a merely experimental line. *Held,* that the plainly expressed intention of the grantor in the deed could not be defeated by the uncertain parol testimony in the case.

Argued March 2, 1896. Appeal, No. 287, Jan. T., 1895, by defendants, from judgment of C. P. Montour Co., Sept. T., 1892, No. 16, for plaintiff, by the court without a jury. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for a narrow triangle of land in Lewis township. Before IKELER, P. J.

The facts appear by the opinion of the Supreme Court.

The case was tried without a jury and judgment was entered for plaintiff.

*Error assigned,* among others, was in entering judgment for plaintiff.

*Wm. Kase West* and *James Scarlet,* for appellants.—There being no ambiguity in the written instrument parol evidence was inadmissible to explain or reform it: Phillips v. Meily, 106

Pa. 536; Broom's Leg. Maxims, 577; Hannum v. West Chester, 70 Pa. 367; Tiedeman on Real Property, 827; Caldwell v. Fulton, 31 Pa. 475; Willis v. Schwartz, 28 Pa. 413; Ogden v. Porterfield, 34 Pa. 191; Wahl v. R. R. Co., 158 Pa. 257; Crest v. Jack, 3 Watts, 238; Keeler v. Vantuyle, 6 Pa. 253; Chapman v. Chapman, 59 Pa. 214.

The rule that fixed monuments are to prevail over courses and distances in fixing the boundary of land applies with less force to those monuments which are artificial than to natural and permanent objects, and fails entirely when from the designation of quantity or other elements of description it is apparent that the courses and distances are correct: Turner v. Baker, 27 Am. Rep. 226; McCoy v. Hance, 28 Pa. 149; Hagey v. Detweiler, 35 Pa. 409.

*Robert K. Reeder*, and *A. D. Hower*, for appellee.—The iron pin can be designated as a monument on the ground: Willis v. Swartz, 28 Pa. 418; Lodge v. Barnett, 46 Pa. 485; Craft v. Yeaney, 66 Pa. 215.

If there be dispute as to the location of any corner or corners, and consequently of where the division line should be, the jury must decide it: Parks v. Boynton, 98 Pa. 370.

OPINION BY MR. JUSTICE DEAN, April 27, 1896:

This suit is an ejectment for less than three perches of land. It appears that the ancestor of both parties, one George Kisner, being the owner of about one hundred and twenty acres, undertook to divide it equally among his five children; two of them, Ann Catharine Kisner and Sarah Ann Weaver, accepted two of the adjoining purparts, each containing about twenty-six acres, and for these parts, on the 20th of December, 1871, their father executed to them deeds describing each tract by courses and distances. Ann C. afterwards conveyed her purpart to Otis C. Fuller, this plaintiff. The purpart conveyed to Ann had upon it the improvements known as the Homestead; that taken by Sarah was in timber, which she afterwards partly cleared off, and erected a dwelling house and other buildings.

The land, by the request of the father previous to making the deeds, was surveyed, and the lines of the purparts run by one Bacon, a surveyor, and there can be no question that the

description in the conveyances was copied from the survey made by him. The dividing line in the deed to defendant is: "Beginning at a post, thence south seventy-three degrees east one hundred and twenty-five rods to a stone."

There was no dispute between the parties as to the starting point of this line; the post is known as the "Montague" corner, and both are agreed as to its location. The termination of the line and its exact course are in dispute; if both are as plaintiff claims, then defendants are in possession of a small triangle, six rods wide at the base, of his land.

The learned judge of the court below, to whom the case was submitted under the act of 1874, found for the plaintiff. He says: "The description in the deeds, the survey and marks upon the ground, all aided by extrinsic evidence and explanation, proves to our satisfaction, that the true line intended to be fixed and established, and which was practically established, was a straight one from the Montague corner on the west to the iron pin on the east." This finding fixes the termination of the line at an iron pin six rods further south than defendants claim is the stone called for in the deed.

The appellants prefer twenty-two specifications of error, but the finding of the court, as quoted, in substance embraces all the errors of both fact and law complained of.

It seems to us clear that the intention of the grantor in his deed, when he made this partition among his children, is the test by which the dispute should be determined. If this had been a parol partition, one made under the directions of the father, and the children had then, without a written grant, taken possession of their respective purparts, it is probable the great weight given to parol testimony, or as it is termed "extrinsic evidence," by the court below would have been warranted. But, if the intention has been expressed by the grantor in the written description of a deed, that must control in the absence of fraud or plain mistake. Neither fraud nor plain mistake in the conveyance is alleged. The learned judge of the court below comes to the conclusion that it was the intention of the grantor to describe a straight line from the Montague corner to the iron pin as the boundary of defendants' land; that may be correct; if the testimony of Bacon, the surveyor who made the partition, be adopted as the very truth, it is cor-

rect. But, are we to ascertain the intention of old Mr. Kisner by what a witness says now was his intention, or by what Kisner himself said twenty years ago in the carefully drawn description in his deed? These words, indicative of his intention, have not been obliterated in a single syllable by the lapse of time. To ascertain the intention, we must go first, then, to Kisner's deed; for in a long line of cases, from Collam v. Hocker, 1 Rawle, 108, down to Warfel v. Knott, 128 Pa. 528, we have held that the intention of parties to a deed must be ascertained from their written expression, and not from testimony dehors the instrument, except in rare cases, of which this is not one. In the last case cited, it was held proper, where there was ambiguity in the deed, to go back to the written expression in the articles for conveyance, but the rule was not shaken that the written expression of intention, if existing, must determine the fact.

The deed does not call for an iron pin; it calls for a stone; neither monument would be deemed very durable by a surveyor; not because either would be appreciably affected by time or the elements, but because the location of either could be readily changed by malice or interest. They have but little more permanence as to location, than the usual call for "post," which another surveyor rarely finds. But the trees marked as witnesses to the corner, and those marked as line and sight trees leading up to it, are, in surveys no older than this one, found, and when counting to the date of survey are indubitable evidence of the line.

Taking the deed to Sarah Ann Weaver, and also the draft made by Bacon, and going upon the ground, Isaac West, a surveyor, testifies: "We took the official course of Bacon's draft and deed (south seventy-three east), with the variation which we allow for such a length of time (some twenty-two years), one degree and forty minutes (making the course south seventy-one twenty east—south seventy-one degrees and twenty minutes east), which becomes the course, with the proper variation. Following that line, on that course, at thirteen and twenty-five hundredths rods we found a hickory line tree blazed upon the east and west sides, a very light mark, for a line tree." And he then goes on to say that in one hundred and ten rods out of the whole distance of the line, one hundred and twenty-five rods,

he found ten marked living trees, some of them actually, all apparently, counting to the date of survey; running this line as all these monuments indicate, by the general course in the deed, allowing for variation of compass, brings the termination of the division line between the parties six rods south of the iron pin claimed by plaintiff. In thus running the line, the description in the deed is followed by living impossible to be moved monuments on the ground. To the same effect, is the testimony of George W. West, another surveyor. There is no material contradiction of their testimony; the existence of the line upon the ground, as shown by the marked trees, is not denied. Bacon undertakes, now, to say that these many trees must have been marked on the ground by his axman without his authority, on a line which was experimental; that the true line was a straight one not marked, between the iron pin and the Montague corner; he gives no explanation for his omission to call the corner an iron pin instead of a stone, nor for the neglect to mark trees on the alleged straight line between the pin and the Montague corner; admits he was the scrivener who drew the deed for Sarah Ann Weaver from her father, but states he does not know that the well marked line on the ground corresponds with that in the deed. Not one of the surveyors who ran the lines of the deed by the monuments along the line on the ground alleges the termination could be other than at a point about six rods south of the iron pin. Notice the testimony of Mr. Lloyd, an experienced surveyor called by plaintiff:

" Q. Commence and describe that deed of Sarah Ann Weaver's tract. A. 'Beginning at a post, thence south seventy-three degrees east, one hundred and twenty-five rods to a stone.' Q. Does the deed call for that? A. Yes, sir. Q. Does not that course (with the variation) follow the line marked on the ground by the monuments? A. I did not follow that line; I made a straight line between the two points, the post on the west and the iron pin on the east. Q. But in running that line you did not follow the course in the deed? A. No, sir."

The error here suggested by the surveyor, the court manifestly fell into, in both law and fact. As stated by surveyor George W. West: " Q. Is there any authority for drawing a straight line from the iron pin to the Montague corner from the

deeds or the drafts in this case or the monuments on the ground? A. No, not if you follow the bearings in the deed."

The court assumed the intention of the grantor was to run a straight line from an iron pin north to the Montague corner; but the grantor does not so say; he plainly declares his intention to run a line from the Montague corner south seventy-three degrees east one hundred and twenty-five rods to a stone; that line was there marked by enduring monuments on the ground when he executed the deed; and there is no authority in law for disregarding his direction, nor none in fact for finding that he meant another line.

The iron pin is not named as a monument for the starting or ending of the line; it is not mentioned at all; if put there by a surveyor, its location relative to some immovable monument is not fixed; from its character, if used to denote a corner, it may have been changed six rods to one side of the well marked line traced from the Montague corner, the starting point in the deed. That it ever was a monument, or that it continued for nineteen years in the place fixed, rests wholly on parol testimony, and that testimony is flatly contradicted by other parol testimony.

Unless we permit a surveyor, twenty years after, to make a new deed for the grantor, a deed resting alone upon his recollection of what the grantor intended, we must stand on what is written. Solemn deeds are not to be thus set aside, because it is not the law; to so rule, would give instability to all titles. The court should have given an unqualified affirmation to defendants' third point, as follows:

"3. That the line marked on the ground being found by defendants' surveyors as well as plaintiff's, with its proper variation, to agree with the courses and distances of the dividing line as called for in the deed of both parties, such line must control, and the intention of the grant must be taken to convey the land according to the actual survey, and no different intention can be given to such grant."

We have taken no notice of the specifications of error which aver that the line claimed by defendants was acquiesced in by the parties for nearly nineteen years, both of them improving and cultivating up to it as the true line, and therefore plaintiff is now estopped from alleging the contrary. While the weight

of the evidence would seem to show the fact is as alleged, still it was a question of fact for the court, and we will not inquire into and weigh the evidence on the one side and the other. We base our judgment on the failure of the court to find the intention of the grantor from his plainly expressed intention in his deed, and instead, finding it from uncertain parol testimony· dehors the deed, to which resort was wholly unnecessary.

The judgment is reversed, and judgment is now entered for defendants.