Teacher, Exrx. et al., Appellants, *v.* Kijurina.

Argued September 26, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Robert M. Carson,* with him *Goethe Faust,* for appellants.

*R. E. Best,* with him *Frank A. Rugh, John W. Pollins* and *Smith, Best & Horn,* for appellee.

OPINION BY MR. JUSTICE LADNER, November 13, 1950:

This case arose on a bill in equity filed by the Executrix of Sarah Kijurina praying a decree to enjoin Nick Kijurina from selling personal property alleged to belong to plaintiff's decedent, and to enjoin the sale or encumbrance of real and personal property in which it was claimed Sarah Kijurina had an interest as tenant in common.

Nick Kijurina and Sarah Jaic (or Yaick) lived together as man and wife for about 18 years and she was known by the name of Sarah Kijurina. They were in fact not married for Sarah had a husband, Laso Jaic, who had deserted her but from whom she had never been divorced (see *Jac Estate,* 355 Pa. 137, 49 A. 2d 360 (1946)). They lived together on a farm in Westmoreland County, title to which they had acquired in 1935, which was conveyed to them under the names "Nick Kijurina and Sarah his wife." Thereafter they acquired certain other real estate in like manner. Copies of these deeds are not included in the printed record, but it was agreed by both counsel that there is no other language in these deeds indicating the character of estate taken.

Sarah predeceased Nick leaving a will by which she specifically devised the real estate in question to her sister, brother-in-law, nephew and niece. She also bequeathed her personal property to the same legatees and appointed the sister, executrix.

The executrix filed a bill in equity against Nick alleging that she was denied access to the farm in which

she claimed her decedent had a half interest in common, and also prevented from taking an inventory of the farm machinery, livestock, crops, etc. in which she claimed her decedent had a half interest, and prayed for an injunction restraining defendant from selling, disposing of or encumbering the real and personal property.

Nick filed an answer denying the interest claimed on behalf of the decedent's estate, and under New Matter prayed a decree that the farm personal property be decreed to be his, that title to the real estate be declared in him as surviving joint tenant, and that title in a certain joint savings account in the First National Bank in Greensburg be decreed to belong to him as surviving joint tenant.

The defendant, Nick Kijurina, who married Julia Washes after Sarah's death, died about a year after institution of the suit and his widow, Julia Washes Kijurina, who was his executrix and to whom he devised his entire estate, was substituted in his stead.

The court below entered a decree dismissing the bill and from that decree this appeal was taken by the appellant, Mary Teacher, Executrix of Sarah's estate, being Appeal No. 129 March Term 1950, and a separate appeal by her in her individual capacity as devisee being No. 132 March Term 1950. Appeals were also taken as of the same term, being Numbers 133, 134 and 135, by Ann Teacher, Mike Teacher and Mike Teacher, Jr., the other devisees who had joined in the proceedings.

The decree of the court below dismissing the bill includes no affirmative relief to the defendant on the question of the ownership of the sum on deposit in the savings account in the First National Bank in Greensburg so that strictly speaking that question is not properly before us. However, there was a finding of fact and conclusion of law that the account had been opened by virtue of a written agreement filed with the bank

which had been executed by both Nick and Sarah. The court in its adjudication construed this agreement as establishing a joint account with right of survivorship. In order to put an end to this apparently interminable litigation which commenced in March 1944, we now rule that the learned court below was correct in its construction of the deposit agreement and that Nick was entitled as survivor to this deposit at Sarah's death. In so doing the court properly followed *Mardis v. Steen,* 293 Pa. 13, 141 A. 629 (1928). See also, *Com. v. Nolan's Estate,* 345 Pa. 98, 26 A. 2d 308 (1942) ; *Patterson's Estate,* 341 Pa. 177, 19 A. 2d 165 (1941).

The court also found as a fact that no part of the purchase price of the personal property on the farm or used in connection with the operation of the farm was paid by Sarah and concluded in his adjudication she had no interest in said personal property. These findings were approved by the court in banc and as they are supported by adequate evidence, we see no reason to disturb them: *Iacocca v. Robbins Homes, Inc.,* 365 Pa. 351, 74 A. 2d 152 (1950).

The remaining and principal question presented in this case is whether the real estate acquired by a deed in which the granting clause merely named the grantees as "Nick Kijurina and Sarah Kijurina his wife," when in fact they were not married, operated to convey an estate of tenancy in common or vested an estate with incident of survivorship in the nature of a joint tenancy. The court below in the light of the testimony produced as to who paid the purchase price ruled the estate was one of survivorship and thereupon dismissed appellants' Bill.

Such a question affecting as it does title to real estate is ordinarily not properly raised by an action in equity unless it be by bill in partition, for the sound reason that in ejectment proceedings (the classic method of determining title to real estate), the parties are

entitled to have disputed facts settled by a jury. A bill in equity for an injunction, when a question of title is involved, becomes an ejectment bill and a court of equity has no jurisdiction because the constitutional right of trial by jury as "heretofore" must be preserved: *North Shore Railroad Co. v. Pennsylvania Co.,* 193 Pa. 641, 44 A. 1083 (1899) : *Kurtz v. Enterprise T. Co.,* 111 Pa. Superior Ct. 546, 170 A. 337 (1934). And an objection going as it does to the jurisdiction of the court over the subject matter can be raised at any stage of the proceedings. The rule thus announced however while general is not universal and there is a well-defined exception to its application, well stated by Chief Justice DREW, in *Hunter v. McKlveen,* 353 Pa. 357, at p. 361, 45 A. 2d 222 (1946) as follows: "where the plaintiff's right has not been established at law or is not clear, he is generally not entitled to remedy by injunction; but where in a proceeding in equity the plaintiff's title is clear, and all the evidence relating to it is of such a character that a judge in a trial at law, upon the same evidence, would not be at liberty to submit the question of the plaintiff's title to the jury, equity will grant relief although there has been no adjudication of the title at common law."

The learned court below heard considerable conflicting testimony on the question of whether Nick, or Sarah, or both paid the purchase price and made a finding of fact that Nick paid the whole of the purchase. From that finding, along with the other findings, including the language of the deed, it was concluded that the parties intended to have conveyed to them a joint estate with the right of survivorship.

If the court was right in admitting and passing on such evidence to construe the language of the deed, then we would have a case of a dispute of title which equity has no jurisdiction to settle. However, we have concluded the learned court below was in error in admit-

ting or considering such testimony. The language of the deed is clear and unambiguous and the intent of the grantees must be gleaned solely from its language. The principle involved is the same as that in the case of *Cundey v. Hall,* 208 Pa. 335, 57 A. 761 (1904), in which this Court pointed out that as far back as *Hale v. Henrie,* 2 Watts 143 (1834), it was held that in order to effect the title or possession of land it is not competent to show by parol that a deed to two persons as tenants in common was purchased and paid for by them as partners and was therefore partnership property. And see also *Salter v. Acker,* 62 Pa. Superior Ct. 207 (1916). In absence of fraud, accident or mistake parol evidence is inadmissible to vary or limit the scope of a deed's express covenants and the nature and quantity of the interest conveyed must be ascertained by the instrument itself and cannot be orally shown: Henry's Trial Evidence (3rd Ed.) Sec. 375 and cases there cited. Furthermore, in construing a deed, as in the case of a will, it is not what the parties may have intended by the language used but what is the meaning of the words: *Otis Fuller v. Weaver,* 175 Pa. 182, 34 A. 634 (1898) ; *King v. New York etc. Co.,* 204 Pa. 628, 54 A. 477 (1903) ; *Rosengarten Estate,* 349 Pa. 32, 36 A. 2d 310 (1944) ; *Myers Estate,* 351 Pa. 472, 41 A. 2d 570 (1945) ; *Hoffman v. Buchanan,* 83 Pa. Superior Ct. 454, 457 (1924).

As there is no endeavor here to set up an implied or resulting trust, we disregard the testimony and findings as to who paid the purchase money as irrelevant, immaterial and inadmissible to contradict the language of the deed. In fairness to the learned court below, it should be said that in our recent case of *Maxwell v. Saylor,* 359 Pa. 94, 58 A. 2d 355, the majority opinion does in the last paragraph mention the fact (although there was apparently no finding on the matter below) that the decision arrived at was especially just and

proper since every dollar invested was that of the survivor. However, this was said after the decision was made on the basis of the language of the deed and uttered merely to show the ruling made accorded with the morals in that particular case. It was not meant, however, to set aside the settled principles relating to parol evidence to contradict the language of a deed.

This brings us to the real question at issue. The learned court below recognized that the basic rule on which the case turned was that announced in *Thornton v. Pierce*, 328 Pa. 11, 16, 194 A. 897 (1937). This rule, as clearly restated by Mr. Justice HORACE STERN, who was the opinion writer of that case as well as of *Maxwell v. Saylor*, 359 Pa. 94, at p. 96, 58 A. 2d 355 (1948), is to the effect that although a deed under such circumstances (where made to a man and woman not husband and wife) is ineffective to create a tenancy by the entireties, it is not wholly invalid, there being no reason why the grantees like any other two persons cannot take title in some form of dual ownership appropriate under the circumstances. The question then resolves itself to the narrow question, What is appropriate under the circumstances? And this question in cases of this kind, whether parties honestly believe they are husband and wife or merely live in a meretricious relationship and hold themselves out as husband and wife as a concession to public opinion or decency, must be decided solely on the language of the deed.

If we regard the addition of the words "his wife" as mere description or surplusage because of the settled rule that that word cannot operate to create a tenancy by entireties unless the pretended relationship is one of truth and fact, then at common law such a conveyance would have been construed as a joint tenancy. But the common law rule was changed by the Act of 1812, 5 Sm. L. 395, 20 P.S. 121. This Act has been consistently construed as abolishing the *incident of survivorship* but not

as forbidding the creation of an estate with the same attribute of survivorship as a joint tenancy at common law: *Redemptorist Fathers v. Lawler,* 205 Pa. 24, 54 A. 487 (1903). And the Act applies to both personal as well as real property: *Yard's Appeal,* 86 Pa. 125 (1878).

It is perhaps a confusion of terms and an inaccuracy to say that a joint tenancy in real estate may still be created; it is more accurate to say that the *right of survivorship may be engrafted* on a dual estate which might otherwise be a tenancy in common. But to do so that intent must clearly appear in order to overcome the presumption arising from the statute that survivorship is not intended. In the *Redemptorist Fathers* case (supra) that intent was found from the words conveying to the grantees "as joint tenants and not as tenants in common." In *Leach's Estate,* 282 Pa. 545, 128 A. 497 (1925), and *Montgomery v. Keystone S. & L. Ass'n.,* 150 Pa. Superior Ct. 577, 29 A. 2d 203 (1942), it was found from the use of the word "survivor." In *Mardis v. Steen,* 293 Pa. 13, 141 A. 629 (1928) ; *Lowry's Estate,* 314 Pa. 518, 171 A. 878 (1934) ; *American Oil Co. v. Falconer,* 136 Pa. Superior Ct. 598, 8 A. 2d 418 (1939), from the use of the words "with the right of survivorship." Authorities may be multiplied but in each case it will be found there was a reasonably clear expression of intent that the estate created was to have the *attribute of survivorship.*

Entirely consistent with this principle then we find in the class of cases of which this is one that where there was added to the names of the grantees some language to indicate that a survivorship was intended, then that intent will be found and upheld. So in *Thornton v. Pierce,* 328 Pa. 11, 194 A. 897 (1937), the deed was to James Pierce and Sadie Thornton Pierce, his wife, but added thereto was the clause, "the purpose of this deed is to vest in the grantees named

herein an estate by entireties," an estate which like the common law joint tenancy had as its most distinguishing feature the right of survivorship. So in *Maxwell v. Saylor,* supra, there was added to the names of the parties who were not husband and wife, the words "their heirs and assigns, as *tenants by the entireties." "This,"* said Mr. Justice HORACE STERN, "was equivalent to stating in so many words that they desired. to establish a right of survivorship." To which we now add, and therefore sufficient to satisfy the requirements of the Act of 1812. The same result was arrived at in *Frederick v. Southwick,* 165 Pa. Superior Ct. 78, 67 A. 2d 802 (1949), where the intent to create survivorship was found from the use of a substantially similar recital, viz., "The purpose of this conveyance is to create and establish title by the entireties in the within named parties of the second part," etc.

In the case before us there is no such indication of intent. Of course it is arguable that the mere use of the words "his wife" of itself would imply an intent to create an entireties estate. And it is true that if such language without more were used to convey to grantees *who were in fact husband and wife,* an estate by entireties would be created. But we cannot carry the implication of intent that far in a case where the parties are *not married* for they may have been motivated solely by a desire to make a public record conform to the pretended relationship. We cannot safely infer therefore that an estate by entireties was intended by these parties. Hence the clear expression of intent necessary to satisfy the Act of 1812 is lacking. In *Maxwell v. Saylor* we went as far as we could go and that case must not be extended beyond its facts.

The decree is reversed, and the record remanded to the court below to enter a new decree (1) declaring that the title in the real estate in question be declared to have been vested in Nick Kijurina and Sarah Jaic other-

wise known as Sarah Kijurina as tenants in common and granting the injunction prayed for, (2) granting defendants the affirmative relief prayed for by declaring the personal property and the bank deposit to have been the sole property of Nick Kijurina and now vested in his estate, (3) directing all parties to pay their own costs including costs of this appeal.