## Nevil Estate.

Argued January 3, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

reargument refused April 16, 1951.

 31

*Harry J. Alker, Jr.,* with him *A. B. Geary, William F. X. Keoghan* and *Geary & Rankin,* for appellant.

*Robert W. Beatty* and *Butler, Beatty, Greer & Johnson,* for Trustee, appellee.

*Ralph L. Lindenmuth,* with him *George E. Kearns, Jr.,* and *Lindenmuth & Class,* for Trustee ad litem, appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 28, 1951:

Decedent, George W. Nevil, a man of considerable means, died in 1930. By his will he bequeathed sums of money to various friends and charities,—fourteen gifts in all. He then disposed of his residuary estate as follows: "I give and bequeath all the rest, residue and remainder of my estate . . . to my Executors and Trustees hereinafter named, In Trust Nevertheless, to invest the same and keep the same invested, and after deducting the proper charges against the said trust estate and a reasonable compensation for their services, to pay out of the net income thereof as follows:—(1) To Mary A. Kelly the sum of Seven Thousand Dollars monthly so long as she shall live free and clear of any and all her debts, contracts or engagements, and after her death the principal of the said estate, upon which she has been receiving the said monthly sum, shall become a part of my residuary estate. (2) To establish and maintain an Asylum for the deaf, dumb or blind to be known as the 'Nevil Asylum for the Deaf, Dumb or Blind', the said net income to be allowed to accumulate until (it) reaches a sum sufficient, in the judgment of the Executors and Trustees, to establish and maintain such asylum and the support of the same thereafter to be paid out of the income."

After appointing Dimner Beeber and the Girard Trust Company as executors and trustees and giving them authority to invest in non-legal securities, he provided as follows:—"All the bequests, legacies and devises herein contained are to be free from any and all taxes lawfully imposed or to be imposed by the United States Government or any State Government or any Municipal authority thereof, which taxes are to be paid by my estate."

The question here involved arises under the last quoted provision. Mary Kelly, who subsequently married and became Mary K. Ellis and was later divorced, now contends that the bequest to her of $7,000 monthly so long as she should live was to be free, not only of the estate and transfer inheritance taxes ordinarily provided for in a will, but also of her annual income taxes during the entire period of her life. Decedent was a bachelor and 84 years old at the time of his death. His housekeeper had brought over from Ireland a niece, Mary Kelly, then but a young child, who continued to live in decedent's household for about 25 years before his death; during his lifetime he had deeded to her his two valuable residential properties, one in Haverford and one in Ventnor, New Jersey. At the time of decedent's death she was 31 years of age with a life expectancy of about 40 years. Dimner Beeber having died several months prior to the death of decedent the Girard Trust Company, as surviving executor and trustee, has regularly paid her the $84,000 a year out of the income of the trust; it filed its first account as trustee in 1935 and its second account in 1939, both of which were duly audited, but at neither time was any claim made by her that the estate was obliged to pay her income taxes. That claim was made for the first time when the third account of the trustee was filed and audited in 1946; she then demanded that

she be reimbursed by the trustee for the income taxes theretofore imposed upon her by reason of her receiving the monthly payments of $7,000, and that the estate should pay such income taxes thereafter. She explained that her delay in making this claim was due to the fact that during the first years of the trust the investments had been largely in municipal securities and her income taxes were therefore comparatively small, but later on the trustee invested in non-exempt securities, and this, together with the increases in the rate of tax, had made her tax burden very much greater.

The learned court below rejected her claim and she now appeals from its adverse decision.

It is, of course, indisputable that a testator, if he so desires, can provide that his estate should pay not only all estate and transfer inheritance taxes but also the annual income taxes of any or all of the beneficiaries under his will. The question here to be determined is whether it was *this* decedent's intention so to do,—an intention to be gathered from a reasonable interpretation of the language employed in his will. It may be noted in this connection that among his bequests was one of $30 per week to one Harry Kirk so long as he should live, and another to one Louise Zimmerman of $15 per week so long as she should live, so presumably, if appellant's contention were to be upheld, the estate would be obliged to pay the income taxes on the annual payments made to those two beneficiaries the same as on the annual payments made to her.

In our opinion the provision that all the bequests, legacies and devises made by testator were to be free from any and all taxes imposed or to be imposed by the United States Government or any State Government or any Municipal authority thereof, which taxes were to be paid by his estate, cannot be reasonably construed otherwise than as meant to cover only the usual type of

taxes due and payable out of the estate at the time of decedent's death and not annual income taxes thereafter payable by the beneficiaries,—in appellant's case, for example, over a likely period of 40 years. What the testator apparently intended was that appellant should receive from the estate the full sum of her legacy, $7,000 per month, and she does receive from it that amount without deduction or diminution of any kind. Income taxes are not assessed on any bequest or legacy, nor on any specific items of property or sums of money; they are dependent upon a multiplicity of factors wholly apart and distinct from any particular items of income received by the taxpayer,—such, for example, as the amount of charitable contributions he has made, the medical expenses he has incurred, the losses he has sustained from fires, storms or bad debts, the number of his dependents, the deductions to which he is entitled because of advanced age or blindness, and various other items many of which depend upon his voluntary engagements and activities; if this appellant were to remarry and annually file with her husband a joint tax return the amount of her income liability would doubtless be greatly altered; so also the kind of investments from which the income is derived—whether or not in tax-exempt securities—enters as a large determinant of the amount of tax payable on the income derived therefrom. The importance, indeed, of such elements in the computation of the tax is strikingly shown by the fact that in appellant's case, although her income from the trust has been the same each year—$84,000— her annual income tax liability from the time of decedent's death has varied irregularly from practically nothing to approximately $30,000 in 1947, which is the last year for which the figures are set forth in the record. To be construed as meaning that the estate should pay such changing annual income taxes there would be required language much more explicit and

indubitably clear than the phraseology which this testator employed.

There does not appear to be any exact precedent for the present case. However, in *Magee's Estate*, 205 Pa. 37, 54 A. 491, where a testator bequeathed a sum of money to his executors to invest and pay over the income to a named legatee, and directed that "all taxes, federal and state, upon the bequests made and legacies created in my will, . . . shall be paid out of my estate, and not deducted from such bequests or legacies", it was held that all present taxes, such as the federal succession tax and state collateral inheritance tax, were to be paid out of the estate, but that the will did not intend that future taxes, such as that on money at interest, should be so paid. It was claimed by the legatee that the bequest was not the sum named in gross but the income therefrom and that the latter must therefore be protected from diminution by taxes during the whole period of the trust. It was held, however, Mr. Justice MITCHELL writing the opinion of the Court, that "this is a very strained construction, not within the natural meaning of the words or any apparent intent of the testator. . . . He did not give whatever money might be necessary to produce a definite income, free from deduction for taxes, but a definite sum free from deductions at the time of payment, but necessarily contingent as to income upon the rate of interest obtainable and the taxes that may or may not be imposed on the investment. These the testator could not anticipate with any certainty and his will shows no intention to provide for."

The cases cited by appellant are not in point. They deal either (1) with a lease of the property of one railroad company to another providing that the lessee should "pay all taxes . . . upon the yearly payments" to be made by the lessee, and for which taxes the les-

sor "would otherwise be liable". (*North Pennsylvania R. R. Co. v. Philadelphia & Reading Rwy. Co.*, 249 Pa. 326, 95 A. 100); or (2) with a lease of one street railway company to another providing that the lessee should "pay all taxes . . . for which [the lessor] would otherwise . . . be liable . . . on account of its . . . earnings . . . or profits." (*Philadelphia City Passenger Rwy. Co. v. Philadelphia Rapid Transit Co.*, 263 Pa. 561, 107 A. 329); or (3) with a lease by one railroad company to another providing that the lessee should pay all taxes upon the rent reserved by the lessor, for the payment of which taxes the lessor would otherwise be liable. (*Philadelphia, Germantown & Norristown R. R. Co. v. Philadelphia & Reading Rwy. Co.*, 265 Pa. 325, 108 A. 528); or (4) with a ground rent deed providing that the covenantor should "pay all taxes whatsoever . . . on the said yearly rent . . ." (*Van Beil v. Brogan*, 65 Pa. Superior Ct. 384, affirmed sub nomine *Erlich v. Brogan*, 262 Pa. 362, 105 A. 511). Apart from the fact that those cases involved interparty agreements and cannot be considered authorities where the problem concerns the interpretation of the meaning of the words used in a will, the express obligation of the covenantor in each of them was to pay the taxes *on the rent, earnings or profits* which the covenantee would otherwise have to pay, which is quite different from the provision here under consideration; decedent's will does not thus specifically provide that the estate should pay the taxes *on the income* received by appellant from the trust and which she would otherwise be obliged to pay.

Decree affirmed at costs of appellant.

---

DISSENTING OPINION BY MR. JUSTICE LADNER:

I must dissent from the majority opinion because with all due respect I must say it does not give to the

testator's unambiguous language the full effect to which it is entitled.

In construction of wills two propositions should be regarded as basic and fundamental. (1) A testator has the right to make a bequest or legacy in such amount and in such manner and free of *all* taxes of any kind and character. When he does so no difficulties, fancied or real, in carrying out his wishes gives us any right to disregard his plain directions. (2) Simple unambiguous language must be given its full effect or as has been more frequently said, ". . . it is not the province of the court 'to consider what the testator possibly intended, but only what intention is expressed in the language used.'" *Conner's Estate*, 346 Pa. 271, 29 A. 2d 514 (1943). In other words it is not what the testator may have meant but the meaning of the language used: *Farmers Trust Co. v. Wilson*, 361 Pa. 43, 63 A. 2d 14 (1949).

The testator here said in item *Sixth*—*"All* the bequests, legacies and devises herein contained are to be free from *any* and *all* taxes lawfully imposed or to be imposed by the *United States Government* or any *State Government* or any Municipal authority thereof, which taxes are to be paid by my estate." (emphasis supplied) There is no language more sweeping or more all inclusive that any testator could have used.

In *Ehrlich v. Brogan*, 262 Pa. 362, 105 A. 511 (1918), a deed reserving a ground rent required payment of an annual rent or sum of $10,000, without any deduction, defalcation or abatement for *any taxes* charges or assessments whatsoever, "it being the express agreement of the said parties that the said Daniel E. Brogan, his heirs and assigns shall pay *all* taxes whatsoever that shall hereafter be levied or assessed by virtue of any law whatever as well on the said hereby granted lot and buildings thereon erected or to be

erected as on the said yearly rent now charged thereon." This language we and the Superior Court (see *Van Beil v. Brogan*, 65 Pa. Superior Ct. 384 [1917] held included the federal income tax. In *North Pa. R. R. Co. v. Phila & Reading Company*, 249 Pa. 326, 95 A. 100 (1915), a lease between two railroads required the lessee to "pay *all* taxes and assessments . . . upon the yearly payments herein agreed to be made." And also, that the lessee should "pay all taxes, charges, levies, claims, liens and assessments of *any* and every kind, which, during the continuance of the term hereby demised, shall in pursuance of any lawful authority, be assessed or imposed on the demised premises, or any part thereof etc." It was held this included the income tax ordinarily payable by the lessor. In *Philadelphia City Passenger Ry. Co. v. Phila. Rapid Transit Co.*, 263 Pa. 561, 107 A. 329 (1919), a covenant in a lease to pay all taxes lawfully imposed on the lessor, or for which the lessor would be liable on account of earnings or profits was held broad enough to include federal income tax and war excess profit tax. In *Phila., Germantown & Norristown R. R. v. Phila. & Reading Ry. Co.*, 265 Pa. 325, 108 A. 528 (1919), it was also held that *all* means all.

These cases are not really distinguished by the majority opinion but rather dismissed from consideration with the statement that they relate to the interpretation of language in documents other than "wills." I do not see why the nature of a document has anything to do with the meaning of the words used. The meaning of unambiguous language must be the same regardless of the instrument in which it is used and we have hitherto so held: *Teacher v. Kijurina*, 365 Pa. 480, 486, 76 A. 2d 197 (1950) ; cf. *Maxwell v. Saylor*, 359 Pa. 94, 103, 58 A. 2d 355 (1948). Nor do I regard *Magee's Estate*, 205 Pa. 37, 54 A. 491 (1903) as controlling this case. There not only was the tax

clause essentially different but the testator did not give a definite sum of money as "income free from deduction of taxes" whereas here he did.

While we are without precedent in our jurisdiction of a *will case* in which words "any and all taxes" were construed as including income taxes there is a well considered precedent in New York, viz., *Johnson Estate,* 211 N. Y. Supp. 276, aff. sub nom *In re Pflomm,* 150 N.E. 534 (241 N.Y. 513) (1925) where the words *"any and all"* were construed as including income taxes.

There remains but to be said that there is not a line or a jot in the entire will that raises any ambiguity in the language of the tax clause. On the contrary it plainly indicates the testator regarded Mrs. Ellis as the primary object of his bounty and that he wanted her to enjoy a net income of $7,000 per month for the rest of her life and therefore expressly directed that all "taxes are to be paid by my estate." The charitable remainderman is not in existence but is to be formed some indefinite time in the future, if and when there is sufficient income accumulated to establish and endow an asylum for the deaf, dumb and blind. Testator showed no special regard nor any great interest in this charity. Unlike many similar charitable bequests[1] in which testators with meticulous care specify how their charities are to be organized, managed, conducted, etc., this testator indicated little concern, indeed seemed utterly indifferent, casting the whole responsibility as it were on some future court to work out.

I agree with the first impression of the learned judge below when he said in his adjudication, "it is significant that the testator used the expression, 'any

[1] e.g., *Girard v. Philadelphia,* 4 Rawle 322, 325 (1833) ; City of *Philadelphia v. The Heirs of Stephen Girard,* 45 Pa. 9 (1863) ; *Ellis's Estate,* 8 D. & C. 775, 779 (1926) ; *Ashbridge's Estate,* 61 D. & C. 279, 280 (1948).

40

and all taxes', and did not limit the tax-free provision to the estate, inheritance or transfer taxes."

I would reverse the decree of the court below.

Mr. Chief Justice DREW joins in this dissent.