## Potter Estate

*William H. S. Wells*, for accountant.

*Eric A. McCouch*, for Estate of Beverly Potter.

*William Sabine*, for Attorney General of the United States.

*Arthur M. Cooper*, for Commonwealth.

LEFEVER, J., March 27, 1952.—Alice Potter died June 7, 1918, leaving a will and codicils which were duly probated. By her first codicil, she provided, inter alia:

"I herewith direct that my maid, Miss Cenzie Scheller, . . . is to receive from my heirs, $150.00, and that on the second of January of each year, during her natural term of life, free from every tax or other deduction".

There are provisions for gift over upon the death of Cenzie Scheller (not here relevant since she is still alive.)

By adjudication of Judge Thompson, dated September 27, 1921, "$5,000 is awarded to the accountant

as trustee to secure the annuity of $150 to Crescenzia Scheller". The fund so awarded is the fund presently accounted for.

Crescenzia Scheller (also known as Cenzie Scheller) is living and sui juris, so that the trust continues.

It appears from the account that the accountant paid the sum of $150 to Crescenzia Scheller each year from January 3, 1922, through January 2, 1936. Thereafter, for the years 1937 through January 2, 1941, the accountant withheld from the annuity payment the Federal nonresident alien income tax and remitted the balance to Crescenzia Scheller.

Acting under authority of the Trading With the Enemy Act (as amended) the Alien Property Custodian vested the annuity by Vesting Order 1167, dated March 29, 1943, on the ground that annuitant is a German National. By Executive Order No. 9788 all authority, powers, and functions vested in the Alien Property Custodian were vested in the Attorney General of the United States.

Subsequent to the vesting order and through the year 1951 the accountant paid to the Alien Property Custodian or his successor the annuity of $150, but withheld the nonresident alien income tax for the years 1942, 1943 and 1944. The accountant did not pay to the Alien Property Custodian or his successor the amount of any nonresident alien income tax for the years 1945 to 1951, inclusive, on the theory that the Attorney General was obligated to withhold this tax.

In October 1951 a citation was issued by this court and served upon accountant to show cause why it should not file an account in this estate. This citation was issued pursuant to the petition of the Attorney General of the United States so as to enable it to raise the question whether the language of the codicil

required the accountant to pay the nonresident alien income tax for the years 1937 to date out of the principal and/or income of the fund set aside to support the annuity of $150 per annum, in addition to payment of the $150 annuity.

The accountant filed an answer denying its liability to pay the nonresident alien income tax and also filed the current account. Notice of the above question was given to all parties. Oral argument was heard at the audit and the parties have filed briefs which have been carefully considered by the auditing judge.

The arguments presented on behalf of the Attorney General are persuasive. The language "free from every tax or other deduction" would seem to require every tax, whether estate or income, to be deducted from the principal of the annuity so as to carry the annuity free to the annuitant. This is the view taken in a number of other jurisdictions and also by the minority of the Supreme Court of Pennsylvania (see dissenting opinion of Mr. Justice Ladner in Nevil Estate, 367 Pa. 30 (1951)).

Unfortunately for the Attorney General, the instant case is ruled squarely against him by Nevil Estate, supra. In that case the residuary estate was bequeathed in trust to pay $7,000 monthly to the beneficiary. The will also provided: "All the bequests, legacies and devises herein contained are to be free from any and all taxes lawfully imposed . . . by the United States Government or any State Government or any Municipal authority thereof, which taxes are to be paid by my estate." The court, per Mr. Justice Stern, stated at page 33, et seq.:

"In our opinion the provision that all the bequests, legacies and devises made by testator were to be free from any and all taxes imposed or to be imposed by the United States Government or any State Government or any Municipal authority thereof, which taxes

were to be paid by his estate, cannot be reasonably construed otherwise than as meant to cover only the usual type of taxes due and payable out of the estate at the time of decedent's death and not annual income taxes thereafter payable by the beneficiaries,—in appellant's case, for example, over a likely period of 40 years. What the testator apparently intended was that appellant should receive from the estate the full sum of her legacy, $7,000 per month, and she does receive from it that amount without deduction or diminution of any kind. Income taxes are not assessed on any bequest or legacy, nor on any specific items of property or sums of money; they are dependent upon a multiplicity of factors wholly apart and distinct from any particular items of income received by the taxpayer,— such, for example, as the amount of charitable contributions he has made, the medical expenses he has incurred, the losses he has sustained from fires, storms or bad debts, the number of his dependents, the deductions to which he is entitled because of advanced age or blindness, and various other items many of which depend upon his voluntary engagements and activities; if this appellant were to remarry and annually file with her husband a joint tax return the amount of her income liability would doubtless be greatly altered; so also the kind of investments from which the income is derived—whether or not in tax-exempt securities— enters as a large determinant of the amount of tax payable on the income derived therefrom. . . . To be construed as meaning that the estate should pay such changing annual income taxes *there would be required language much more explicit and indubitably clear than the phraseology which this testator employed.*" (Italics supplied.)

The language in the instant will is no more clear than in the cited case that it was to apply to income tax. The decision in Nevil Estate governs the instant

case. Accordingly, the auditing judge rules that the annuity of $150 per annum for Crescenzia Scheller is not payable free and clear of Federal income taxes, so that the accountant is not required to pay the Attorney General the nonresident alien income tax withheld from the payments made to Crecenzia Scheller, nor to reimburse the Attorney General as successor to the Alien Property Custodian for Federal income taxes on the annuity now payable to the Attorney General. Consequently, the claim of the Attorney General, totalling $624.42, is disallowed. . . .