# Nixon's Appeal.

1. A trust resulting from payment of purchase-money may be established by parol, but the evidence must be clear and unequivocal that the money was paid at the time. A subsequent payment will not answer.

2. If one setting up a resulting trust paid no money, he cannot show by parol that the purchase was made for his benefit.

3. A resulting trust will not arise from advance of money to the purchaser after the purchase is complete.[1]

4. Such payment would not, by relation, attach a trust to the original purchase.

5. A resulting trust is raised only from fraud in obtaining title or from payment of the purchase-money when the title is acquired.

November 15th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Washington county*: No. 232, to October and November Term 1869.

At August Term 1868, of the Orphans' Court of Washington

county, Sidney Winnett and Frances Nixon, sisters of John J. Nixon, deceased, presented several petitions for an inquest to value and divide the real estate of the decedent; the petitions set forth the seisin of the decedent, his death intestate, unmarried and without issue, leaving a number of brothers and sisters his heirs. An inquest was awarded, which, September 19th 1868, made an inquisition dividing the intestate's real estate into two parts. On the 17th of December 1868, before the return of the inquisition, Frances Nixon presented a petition setting forth the foregoing facts, and objecting to the confirmation of the inquisition, because the land of which the partition was made was held in common by the decedent and the petitioner, although the deed for it was in the name of the decedent alone; that her petition for partition setting forth that the decedent was sole owner, was drawn and signed by her in mistake of its representations and of her rights; she having signed the petition as it came from her attorney, whom she had not seen, and who had prepared it under instructions from her agent;—that she had supposed the petition set forth the interest of the decedent as an undivided moiety and that she did not know that it was otherwise until the inquest was held; that she requested the inquest to set apart her share in the land, but that they refused to do so because her right was not set out in the writ. She averred that she could prove that the title was held by the decedent in trust for her and himself. She prayed the court "to set the said proceedings on said writ of partition aside, and permit the record to be amended in such a manner as to disclose her ownership of the undivided half of said land; and if her title to said land should be disputed, then that your Honors direct an issue to try her title, and that the proceedings in partition be stayed until said issue is determined; and that your honorable court will grant her other and further relief as equity and justice require."

The court granted a rule on the heirs of the decedent to show cause why the petition should not be granted.

Sarah Winnett filed an answer, averring that the decedent held the title of the land for his own use, and denying that it was encumbered with a trust in favor of the petitioner.

Testimony was taken under the rule. The property in dispute originally belonged to John Nixon, the father of the parties and of the decedent, and was sold on the 25th of September 1847, by his administrator, Jonathan West, by order of the Orphans' Court, for the payment of debts: the land was bought by the decedent, and conveyed to him. On the distribution of the father's estate, the share of each heir was $135.20.

Frances alleged that her share was applied as part of the purchase-money, and that she had a resulting trust in the land in dispute.

There was evidence for Frances, by Asa S. Hanely, a tax collector, that the decedent requested him "to call at his house so that Frances might see the amount of tax, as that she was as much concerned in it as he was, as she was to pay the one-half of it, and that she owned as much of the land as he did, as they had bought out the other heirs in partnership, and that she had done as much toward paying for this land as he had." West, the administrator of John Nixon, Sr., testified that he heard a conversation between the decedent and Frances, on the day of the sale of the land as the father's estate: "John had his doubts about buying the property. He hadn't his mind made up whether to buy the property or not. Fanny said if he would buy the farm, she would help him pay for it. In reference to her share of the father's estate, she left it in this farm." There was evidence by a number of witnesses that the decedent had frequently declared that he held the land in partnership with Frances, and had in other ways acknowledged that she had an interest in the land.

The court (Acheson, P. J.) held that the evidence did not establish a resulting trust, and dismissed the petition.

Frances Nixon appealed, and assigned the dismissal of her petition for error.

*W. Montgomery*, for appellant.—Frances having paid in part for the land a trust resulted in her favor: Beck *v.* Uhrich, 1 Harris 638; Reed's Appeal, Id. 476; Harrold *v.* Lane, 3 P. F. Smith 268; Lynch *v.* Cox, 11 Harris 268. This is so, although both the legal owner and the cestui que trust contribute and in unequal proportions: Edwards *v.* Edwards, 3 Wright 384; Collyer on Part. § 135; Bottsford *v.* Burr, 2 Johns. C. C. 405; Stewart *v.* Brown, 2 S. & R. 461; Wallace *v.* Duffield, Id. 521; Kisler *v.* Kisler, 2 Watts 323; Shoemaker *v.* Smith, 11 Humph. 81; Purdy *v.* Purdy, 3 Maryl. Ch. 547; Buch *v.* Swazey, 35 Maine 41; Jackson *v.* Moore, 6 Cowen 706; Morey *v.* Herrick, 6 Harris 129; Bacon *v.* Virnig, 30 Maine 121; Sayre *v.* Townsend, 15 N. H. 647; Shoemaker *v.* Smith, 11 Humph. 81.

*D. S. Wilson*, for appellee.—If there was a resulting trust, it is barred by the Act of April 22d 1856, § 6, Pamph. L. 522, Purd. 654, pl. 13; Miller *v.* Franciscus, 4 Wright 335; Clark *v.* Trindle, 2 P. F. Smith 492; Warfield *v.* Fox, 3 Id. 382; Kenyon *v.* Stewart, 8 Wright 180. Trust in land must be in writing: Act of 1856, *supra;* § 4, Pamph. L. 533, Purd. 497, pl. 3; Barnet *v.* Dougherty, 8 Casey 372; 3 Sugden on Vendors, ch. 20, § 1, pl. 17; Hill on Trustees, 56; Randall *v.* Morgan, 12 Vesey 74; Forster *v.* Hale, 3 Id. 707; Steere *v.* Steere, 5 Johns. Ch. 12; Bottsford *v.* Burr, *supra*. A resulting trust must be contemporaneous with the deed: Rogers *v.* Murray, 3 Paige 398; Bottsford *v.* Burr,

Barnett v. Dougherty, *supra*. The proof to sustain a resulting trust must be clear: Bennett v. Fulmer, 13 Wright 163; Hill on Trustees 60; Cowden v. Oyster, 14 Wright 372.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—A trust which arises or results by implication or construction of law from payment of the purchase-money of land may unquestionably be established by parol evidence; but then that evidence must be clear and unequivocal in showing that the money was paid at the time. A subsequent payment, however clearly proved, will not answer the requirements of the law. This is well expressed by Chancellor Kent in Botsford v. Barr, 2 Johns. Ch. Rep. 408: "If A. purchases an estate with his own money, and takes the deed in the name of B., a trust results to A., because he paid the money. The whole foundation of the trust is the payment of the money, and that must be clearly proved. If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show, by parol proof, that the purchase was made for his benefit or on his account. * * * * Nor would a subsequent advance of money to the purchaser, after the purchase is complete and ended, alter the case. It might be evidence of a new loan, or be the ground of some new agreement, but it would not attach by relation a trust to the original purchase: for the trust arises out of the circumstance that the money of the real and not of the nominal purchaser formed at the time the consideration of that purchase, and became converted into land." The American cases which confirm this doctrine may be found collected in Mr. Bispham's edition of Hill on Trustees 97, note. "A resulting trust," says Mr. Justice Strong, in Barnet v. Dougherty, 8 Casey 372, "is raised only from fraud in obtaining the title or from payment of the purchase-money, when the title is acquired. Payment of the purchase-money, subsequently, is not sufficient to raise a legal implication of a trust, as all the authorities show."

John J. Nixon bought the land in question at a public sale by the administrator of his father's estate under the order of the Orphans' Court for the payment of debts. Part of the price was paid in cash, and the balance in the individual obligations of the purchaser. There is no evidence that Frances Nixon contributed any money to the cash payment. It may be, however, that when an original verbal agreement between two persons to make a joint purchase is clearly proved, although no part of the hand-money was actually paid at the time by him whose name is not in the articles or deed, yet the subsequent payment of his share in fulfilment of the bargain will relate back to the original agreement and attach to the land as a resulting trust. It is not necessary to determine that in this case. There was undoubtedly evidence

of repeated admissions by John Nixon that he held the land in partnership with the appellant, and particularly to Asa S. Hanly, " that she owned as much of the land as he did, as they had bought out the other heirs in partnership, and that she had done as much toward paying for this land as he had." Unfortunately for the appellant, however, there is no evidence whatever of any such agreement originally, that the purchase at the administrator's sale should be for their joint use or benefit. On the contrary, the only evidence of what occurred at the time is inconsistent with any such agreement. Jonathan West, the administrator, testified that he heard a conversation between John and Frances Nixon on the day of the sale. " John had his doubts about buying this property. He hadn't his mind made up whether to buy or not. Fanny said, if he would buy the farm, she would help him pay for it. In reference to her share of her father's estate, she left it in this farm." This certainly contradicts any theory of a joint purchase having been in contemplation. Agreeing to help a person buy a farm is something entirely different from agreeing to join him in the purchase. Had such agreement been reduced to writing, it cannot be pretended that it would have given her any interest in the land. So her leaving her share of her father's estate in this farm had no significancy whatever regarded as evidence of any such agreement. Had there been a joint purchase, her share would have been a credit on the purchase-money—would have been paid and extinguished, and therefore in no sense left in the land. The evident meaning was that, as an accommodation to John, she would not insist upon the payment of her share of the purchase-money immediately, but hold it as a claim upon the land.

We concur, therefore, with the learned judge below in the opinion that the evidence in the case was not sufficient to raise a resulting trust, which renders unnecessary the consideration of whether the limitation provided by the sixth section of the Act of April 22d 1856, Pamph. L. 533, barred the right of the appellant.

　　　　Decree affirmed and appeal dismissed at the costs of the appellant.