## Peel, Appellant, *v.* Peel.

Argued March 17, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*W. A. Griffith* and *M. J. Hosack,* for appellant.

*Hartje & Herrington* and *Ivory & Ivory,* for appellee.

PER CURIAM, April 13, 1931:

Appellant, Matthew Peel, in his bill prays that his wife, Margaret Peel, from whom he has been separated since 1928, be declared a trustee for two separate properties situate in the 23d Ward of the City of Pittsburgh, each fully described in the bill, purchased in 1903 and 1920 respectively, and to which title was taken in defendant's name. Appellant bases his claim on an alleged oral antenuptial agreement with his wife, under which they agreed to purchase real estate and take title thereto by entireties, the agreement providing that both husband and wife would contribute to the consideration paid for the properties so purchased from their individual earnings. Appellant's bill avers that, following their marriage, he and his wife again discussed the purchase of the properties in question, and, placing full confidence in his wife, he permitted her to attend to all matters in connection with the transactions. Appellant further avers that defendant, instead of taking title in their joint names, received deeds naming her as sole grantee. Upon discovery of this fact, plaintiff instituted these proceedings, claiming defendant holds title in his interest by a resulting trust because of his con-

tributions to the purchase price, and asks that she be declared a trustee ex maleficio as a result of her alleged fraudulent act of taking title in her own name contrary to the alleged agreement and concealing this fact from plaintiff.

The testimony discloses that plaintiff, who is 10 years younger than his wife, married her in 1903 following his residence of a year in her home as a boarder. The court found that defendant then and since has owned and conducted a grocery store in the Twenty-third Ward of the City of Pittsburgh, and was, at the time of her marriage, the owner of realty at 212 Kearcher Street, in that city, which property is not involved in this controversy. At the time of his marriage, plaintiff was employed as a truck driver earning $2.65 a day, which wage was later increased to $3.05. The real estate in question was purchased in two parts: Four lots and a brick building were conveyed to defendant by deed dated April 3, 1903, and the second plot, consisting of five lots and a frame dwelling house, was conveyed to her by deed dated March 10, 1920.

The chancellor found plaintiff utterly failed to establish the agreement set forth in his bill or prove any circumstances from which an inference to sustain his contention could be drawn, and further, that plaintiff did not pay any part of the hand money or of the debt for unpaid purchase money secured by the mortgages on the respective properties.

Plaintiff attempted to prove that for 20 years he had made payments to his wife out of his earnings under the impression she was appropriating the amount so paid to liquidating the purchase-money mortgages, failing, however, to overcome the presumption that any such payments made by him were for family maintenance. Although plaintiff testified he gave his pay envelopes "until 1924," to his wife, this statement she flatly denied, and plaintiff's daughter testified to having frequently made substantial bank deposits for him. The

evidence shows that out of his wages, plaintiff was paying for automobiles and making other purchases, including dogs, fighting cocks and carrier pigeons. Considering the amount of his income, it is extremely doubtful whether, in view of these expenses for his personal pleasures, he was at any time able to contribute toward the purchase of real estate.

The record is devoid of evidence of conduct on the part of defendant such as a court of equity would deem fraudulent and relieve by declaring either a constructive or ex maleficio trust in plaintiff's favor. In view of this and the court's finding that plaintiff made no payments on the purchase price of the real estate in dispute, the parol testimony of subsequent advances of money by plaintiff to his wife is inadequate to prove a resulting trust, especially as the statute of frauds becomes applicable: Bispham's Equity, 11th edition, section 195, page 192. "Where no money is advanced, and there is nothing more in the transaction than is implied from the violation of a parol agreement, equity will not decree the purchaser a trustee. A resulting trust of this kind must arise, if at all, from the payment of the purchase money, at the time of the conveyance": Bispham, supra, section 58, page 74. "If therefore the party who sets up a resulting trust made no payment, he cannot be permitted to show by parol proof that the purchase was made for his benefit or on his account...... Nor would a subsequent advance of money to the purchaser, after the purchase is completed and ended, alter the case": Nixon's App., 63 Pa. 279, 282.

The evidence supporting the findings of the chancellor fully sustains his decree and consequently it will not be disturbed on appeal: Belmont Laboratories, Inc., v. Heist, 300 Pa. 542, 546, and cases there cited.

The judgment is affirmed, costs to be paid by appellant.