Good *v.* Good et al., Appellants.

Argued October 4, 1954.    Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Robert W. Anthony*, for appellants.

*John Woodcock, Jr.*, for appellee.

OPINION BY ROSS, J., March 24, 1955:

On October 3, 1949 a bill in equity was filed in the Court of Common Pleas of Blair County by John Gut, sometimes written John Good, alleging that he had turned over to his son, Wallace Good, the sum of $2,500, to be held by the latter for the sole use and benefit of the plaintiff and subject to delivery at such time or times and such amounts as the plaintiff might elect to take; that Wallace Good thereupon deposited the money in the Altoona Trust Company, opening a joint account in his own name and that of his wife, Adela Good, who was also named a defendant; and that plaintiff had demanded the return of the money, which was refused.   The prayer of the bill was for an injunction restraining defendants from withdrawing the money and the trust company from honoring any check against the account, and for a judicial declaration of a trust relationship regarding the fund and return of the money to plaintiff.

The answer categorically denied delivery of any money to defendants by the plaintiff, the existence of any agreement thereto, and demand and refusal to return. On the contrary, it averred that the money deposited in the joint account of Wallace and Adela Good was their sole property, and prayed dismissal of the bill.

A question of fact having been raised, the court issued a temporary injunction pending trial by jury on the issue of fact. An amendment to the bill was allowed setting forth that the total sum was given the defendant son on three separate occasions—$500 in the fall of 1946, $500 in the winter of 1946-47, and $1,500 in the latter part of June or early part of July 1948—in substitution of the original averment that the money was turned over entirely on the last mentioned date.

After trial on February 13, 1951, the jury answered in the affirmative all of the following specific questions: "1. Did John Gut give his son $500.00 in the fall of 1946? 2. Did John Gut give his son another $500.00 a month later? 3. Did John Gut give Wallace Good an additional $1500.00 in June or July, 1948? 4. Was this money to be held by Wallace Good for the use and benefit of John Gut?" The jury also recommended that a guardian be appointed for the plaintiff.

Defendants' motion for a new trial was refused and the case referred back to the equity side of the court, where a decree nisi in the form of a mandatory injunction was entered in accordance with the special verdict. After defendants' exceptions were dismissed, they took this appeal.

All of the alleged payments were in cash. Plaintiff at the time of trial was 76 years of age. He testified that he gave his son Wallace $500 in the first instance after he (plaintiff) had received $800 from an-

other son, Stanley, which the latter had saved for him out of the proceeds of the sale of livestock; that the second $500 represented $300 remaining from the original $800 paid to him by Stanley, plus $200 representing the sale of a cow; and that his wife, now deceased, who had previously taken care of the family finances, had told him when she left for the hospital that their money was under the couch, that after she died he found it amounted to $1,500, and that he then entrusted it to Wallace.

Appellants contend that assuming arguendo that the jury's verdict was valid, plaintiff stands in a creditor relationship towards his son with respect to $2,500 and that as a creditor he cannot recover the debt from assets held by defendants as tenants by the entireties, for which proposition they cite as authority *Murphey v. C. I. T. Corp.*, 347 Pa. 591, 33 A. 2d 16, and *Lunnen v. Hunter*, 348 Pa. 402, 35 A. 2d 292. This principle of law is sound but it is not applicable here. The jury specifically found that the $2,500 in question was given to Wallace Good to be held by him *for the use and benefit of John Gut.* A trustee may not use the res as his own (*Pugh v. Gaines,* 156 Pa. Superior Ct. 613, 41 A. 2d 287), and it follows that he cannot, by the simple expedient of depositing it in a bank account in the joint names of himself and his wife as tenants by the entireties, thereby avoid his duty to the cestui que trust or convert the trust relationship into something else.

A resulting trust arises where a person makes, or causes to be made, a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein. *Gray v. Leibert,* 357 Pa. 130, 53 A. 2d 132. It is well settled that a trust as to personalty may be established by

parol where the declaration of intention to establish one is definite, clear and explicit, and equity, once such trust is created, will enforce its execution. *Popilock v. Piernikoski,* 161 Pa. Superior Ct. 587, 56 A. 2d 326. If, as appellants suggest, we assume for the purpose of argument that the jury's verdict was in accordance with the facts, plaintiff became not a creditor but a cestui que trust as to the moneys turned over to the defendant son. It is fundamental that a defrauded party may trace the funds of which he was deprived and recover them.

The defendant daughter-in-law's testimony, if believed, would have established that the $2,500 deposit of June 28, 1948—about the time plaintiff alleged he entrusted the last $1,500 to her husband—had been earned and saved by her over a period of years during the course of her employment at various places; that plaintiff never gave any money either to her or to her husband; and that, on the contrary, they had supplied him with money of their own and with necessaries. The testimony of the litigants being diametrically opposed, the learned chancellor properly invoked the aid of a jury to resolve the conflicts.

Equity Rule 1513 provides that the verdict of the jury shall be in the form of answers to specific questions and shall not be binding upon the court. Appellants recognize properly, therefore, that their appeal lies from the decision of the chancellor.

Findings of fact made by a chancellor, who saw and heard the witnesses, when confirmed, as here, by the court en banc, will not be reversed on appeal if they are supported by adequate evidence. *Peters v. Machikas,* 378 Pa. 52, 105 A. 2d 708; *Holst v. Butler,* 379 Pa. 124, 108 A. 2d 740.

From our examination of the record we believe that, although this elderly plaintiff's testimony was vague

as to dates, he and his witnesses furnished sufficient competent evidence to support the decree of the learned chancellor.

Decree affirmed at the cost of the appellants.