Palone, Appellant, *v.* Moschetta.

Argued October 3, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John I. Hook, Jr.,* and *George B. Stegenga,* for appellant.

*Adolph L. Zeman,* with him *Robert L. Zeman, Carl E. Gibson, Richard DiSalle,* and *Zeman & Zeman,* for appellees.

OPINION BY MR. JUSTICE BELL, December 29, 1956:

Plaintiff brought a complaint in equity against defendants for an accounting and payment of one-half of

the rents and profits resulting from the purchase, developing, leasing and sale by John J. Moschetta of certain dwelling lots in the Village of Crucible, Pa. Plaintiff filed a prolix complaint of 94 paragraphs in which he sought (a) to vary by parol evidence the terms of a written agreement made between him and John J. Moschetta, and (b) to avoid and nullify a release given by him to Moschetta which covered particularly the properties in suit and all claims arising therefrom. Moreover, plaintiff filed his complaint more than 7 years after he had given Moschetta the above mentioned release. Defendants filed preliminary objections in the nature of a demurrer to plaintiff's complaint. The lower Court sustained the preliminary objections, dismissed the complaint and entered judgment for the defendants.

Plaintiff averred that Moschetta had *orally* agreed on December 4, 1946, prior to their subsequent written agreement of December 7, 1946, to pay plaintiff one-half of the rents and profits. Plaintiff also alleged that when he executed the release on July 6, *1948* (which will be hereinafter more specifically referred to), he was partly induced to do so by Moschetta's statement that new homes would be erected by Moschetta on various lots which he (Moschetta) owned in that part of the adjacent ground known as the "Second Addition", and that streets would be laid out and improved, and water, gas and electricity made available, and that plaintiff would realize from the sale of the 45 lots which Moschetta conveyed to him larger profits than if he waited until all the properties in the development were sold.

Plaintiff and John J. Moschetta on December 7, 1946, entered into an ineptly written agreement, the material provisions of which are as follows:

"The party of the first part, John J. Moschetta, agrees that in consideration of the party of the second

part, Marion Palone, informing him that the dwellings were for sale and negotiating the transaction in his behalf, and in consideration that following the purchase of the dwellings, the party of the second part, Marion Palone, *agrees to manage the community,** collect rents, keep the streets ashed during slippery weather, look after the general welfare of the party of the first part in said community, *such as selling the. houses,* entering into articles of agreement, and any and all things that the party of the first part deems necessary during his ownership of said premises prior to disposal of same, the party of the first part, John J. Moschetta, agrees to pay the party of the second part, the sum of $40,-000.00 provided that the first part makes such profit as was agreed between the parties hereto at the time of purchase of said premises and it was agreed not to stipulate the amount in this agreement. *This shall be subject to the control and opinion of the party of the first part.*

"The amount of $40,000.00 is not to be paid, or any part of the same, *until the dwellings have been sold* and the unstipulated profit as was originally agreed upon realized. . . . However, it is specifically agreed between the parties hereto, that the amount of $40,000.00 as set forth above, *does not constitute a promise to pay that amount* and it is agreed that after the expiration of a six month's period the parties hereto will meet and mutually agree between themselves whether the amount shall be paid in full or determine whether the amount is subject to revision, depending upon the amount of profit realized by the party of the first part in this transaction. *This shall be subject to the guidance and exclusive control of the party of the first part.*

* Italics throughout, ours.

"It is further agreed that the amount of $40,000.00 as set forth *is contingent upon the party of the second part carrying out his duties relative to the sale, management and disposal of said premises.*"

Plaintiff also averred that Moschetta, pursuant to a written agreement with the Crucible Steel Company dated December 6, 1946, paid the Company $157,000. for certain houses and lots, and the properties were conveyed by the Company to John J. Moschetta and Elizabeth P. Moschetta, his wife, on January 23, 1947. This was the purchase price and did not include the large sums defendants paid for expenses and development. *Plaintiff never paid one penny for the purchase or development of the property.* Plaintiff further averred that at his suggestion Moschetta subsequently agreed to employ A. T. Tapper, an insurance agent, to negotiate for the sale of dwellings, and that this additional expense would be considered as a cost incurred in connection with the resale of the properties, which cost was to be borne not by Palone as the written agreement provided, but by both Palone and Moschetta. It is clear from the plaintiff's bill of complaint that he failed to perform the terms and conditions which he agreed to perform in the said written agreement of *December 7, 1946.*

We interpret that unusual and somewhat obscure agreement to mean that Moschetta would pay to plaintiff *after* all the dwellings had been sold a certain amount of the profits which he, Moschetta, made, not to exceed, however, $40,000.; that this amount was contingent upon plaintiff carrying out his duties relative to the sale, management and disposal of all of the premises, and that that amount was likewise subject to the exclusive control of Moschetta.

On July 6, *1948,* long prior to the sale of all the dwellings and properties, Palone executed and delivered to John J. Moschetta *a release* of all such claims and demands which "I ever had, now have, or which I . . . hereafter can, shall, or may have, for, upon, or by reason of any matter cause, or thing whatsoever, and particularly on account of any claim which I might have by reason of the Agreement entered into *December 7, 1946,* set out above." For that release, Marion Palone received the sum of $5,000. in addition to the conveyance of 45 lots in the Crucible Plan of Lots, Second Addition.

All the money for the purchase and development and sale of the properties in question, as well as all expenses, was paid by defendants. Not a dollar was paid by plaintiff, nor did plaintiff perform the duties stipulated in the written agreement. Nevertheless, Palone received from defendants $10,000. plus 45 lots.

Plaintiff averred that he gave the above mentioned release dated July 6, 1948 (partly) as a result of Moschetta's misrepresentations of the amount of profits he was making and anticipated making, and that these misrepresentations were made with the intent (a) to conceal Moschetta's total profits and (b) to deprive plaintiff of his proper share of the profits. Plaintiff's bill of complaint was filed, we repeat, more than 7 years after he had given the aforesaid release.

The alleged oral promise to pay plaintiff one-half of the rents and profits, which was made prior to the written agreement of December 7, 1946, was clearly inadmissible to alter or vary the written agreement which specifically included and covered the subject matter of the oral promise. *Bardwell v. Willis Company,* 375 Pa. 503, 100 A. 2d 102.

The law is of course well established that an oral agreement is admissible to vary or void a written agreement where fraud is alleged (and subsequently proved by clear and convincing evidence): *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255; *Bardwell v. Willis Company*, 375 Pa., supra; *Adams v. Frederickson*, 384 Pa. 32, 119 A. 2d 240. However, it is not sufficient merely to aver misrepresentations or fraud. " '. . . the facts which constitute the fraud must be clearly and explicitly set out, so that the court and not the pleader may judge whether the act or representation complained of was fraudulent or otherwise' ": *Compton v. Heilman*, 331 Pa. 545, 550, 1 A. 2d 682. See to the same effect: *Hornsby v. Lohmeyer*, 364 Pa. 271, 276, 72 A. 2d 294; *Kepler v. Kepler*, 330 Pa. 441, 199 A. 198; *Bardwell v. Willis Company*, 375 Pa., supra; Rule 1019 (b), Pa. R. C. P., Rule 1501.

Plaintiff, in order to avoid and nullify his written release, merely avers misrepresentations with respect to the amount of profits Moschetta was making* during the progress of the development and anticipated making* when the development was fully sold, as well as his intentions to develop adjacent land. In *Hein v. Fetzer*, 301 Pa. 403, 152 A. 388, the Court reiterated the general rule with respect to promises concerning future events (page 408):

". . . We have recently held more than once that a mere breach of good faith, or a broken promise to do or refrain from doing something in the future . . . is not accounted 'fraud of the kind that will admit parol testimony to vary the terms of a written contract' . . . see Fidelity T. & T. Co. v. Garland, 291 Pa. 297, 302-3,

---

\* There was no averment of the amount of profits Moschetta made or was making or anticipated making.

and cases there cited; also Emmanuel v. Hughes, 295 Pa. 492, 497; U. S. Nat. Bank v. Evans, 296 Pa. 541, 550-51."

Under the particular written agreement entered into by these parties, Moschetta's alleged misrepresentations would not be sufficient to constitute fraud, or entitle plaintiff to the equitable relief he now seeks.

Decree affirmed; Costs to be paid by appellant.