Potoczny *v.* Dydek et ux., Appellants.

552

Argued April 14, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*H. Beryl Klein,* with him *Harold L. Roth,* and *Roth & Herskovitz,* and *Klein, Simoni & Morris,* for appellants.

*James E. Rowley,* with him *Myron E. Rowley, Ralph E. Smith,* and *Rowley, Smith & Rowley,* for appellee.

OPINION BY WRIGHT, J., June 15, 1960:

We are here concerned with an appeal by Stanley Dydek and his wife, Millie Dydek, from a final decree of the Court of Common Pleas of Beaver County, in equity, dated November 30, 1959. It will be necessary to set forth the factual and procedural situation in considerable detail.

Sometime prior to June 1, 1956, Martin Potoczny and his uncle, Stanley Dydek, negotiated with Ray E. Plunkett for the purchase of a farm of 150.87 acres in Independence Township, Beaver County. During these negotiations, it was agreed between Potoczny and Stanley Dydek that the latter would purchase the northern two-thirds of the farm and Potoczny would purchase the southern one-third, containing approximately 51 acres. On June 1, 1956, Plunkett entered into a written agreement with Potoczny and Stanley Dydek wherein he agreed to sell the entire farm for a consideration of $4,500.00, payable $500.00 down and the balance on delivery of the deed. Of the original down payment, Potoczny paid $150.00 and Stanley Dydek paid $350.00. Both Potoczny and Stanley Dydek were named in the agreement of sale as buyers, but their individual shares were not delineated. Prior to the execution of the written agreement, Potoczny had arranged with his father-in-law to borrow his share of the purchase price.

Following the execution of the agreement of sale, Potoczny went on the southern portion of the farm and,

554

with the knowledge of Stanley Dydek, cleared about three acres, and hauled in a quantity of used stone, material and lumber for use in the construction of a dwelling. On or about August 30, 1956, Potoczny and Stanley Dydek, together with Millie Scootis, who is now Millie Dydek, called at the office of Harold E. Craig, Esquire, in Aliquippa, to have the title examined and, stated Potoczny, "to get an understanding between the three of us on the dealings between me and Stanley before they got married". At that time several methods of taking title to the property were discussed. At first, the parties wanted two deeds, one to Potoczny for the southernmost 51 acres, and one to Stanley Dydek for the remainder. However, since no survey had been prepared, Attorney Craig explained that, when the time came for the survey, they might not want the lines to run exactly straight but, rather, to follow the fence lines. After further discussion, it was finally agreed that Potoczny should assign or transfer his rights under the written agreement of June 1, 1956, to Stanley Dydek; that Stanley Dydek was to receive a deed for the entire property in his own name and pay the balance of the consideration and expenses therefor; that, upon receipt by Stanley Dydek of the deed for the entire premises, Potoczny and Stanley Dydek were to have a survey made of the dividing line between Potoczny's southernmost 51 acres and Stanley Dydek's portion of the farm; that, upon completion of the survey, Potoczny was to pay to Stanley Dydek a sum equal to one-third of the consideration, plus costs and expenses, less the $150.00 already paid by Potoczny, payable at not less than $60.00 per month, with interest at 3% per annum; and that, when the full amount was paid to Stanley Dydek, he was to execute and deliver to Potoczny a deed for the southernmost 51 acres of the farm as surveyed. Potoczny never signed, executed or

delivered any assignment or release of his rights in the agreement with Plunkett.

On September 2, 1956, Stanley Dydek and Millie Dydek were married. On September 13, 1956, Plunkett conveyed legal title to the entire 150.87 acre farm to Stanley Dydek. Upon delivery of the deed, Stanley Dydek paid the entire balance of the purchase price, costs, fees and expenses. The deed was subsequently recorded on December 3, 1956. Stanley Dydek did not notify Potoczny of the fact that the deed had been delivered, and the latter first learned about it in January, 1957. He then went to Stanley Dydek to see about getting the survey made. When Stanley Dydek refused because of the cost, Potoczny offered and agreed to pay the entire cost of the survey, which offer was refused. Moreover, Potoczny was denied permission to go on the farm to make a survey, and was ordered to stay off on threat of prosecution. On May 9, 1957, Stanley Dydek executed a deed from himself to Stanley Dydek and Millie Dydek, his wife, for a consideration of $1.00.[1] This was done without the knowledge or consent of Potoczny. On or about September 21, 1957, Potoczny offered to pay Stanley Dydek his share of the purchase price and expenses upon delivery to him of a properly executed deed for the southernmost 51 acres of the farm. This offer was refused.

On February 7, 1958, Potoczny filed a complaint in equity in which Stanley Dydek and Millie Dydek were made defendants. Preliminary objections were overruled, and an answer containing new matter was filed. Following a reply to the new matter, the case was set down for hearing. Potoczny testified in his own behalf,

---

[1] Since the grantees were not bona fide purchasers for value without notice, this conveyance did not create rights which were prejudiced by the decree below. See *McCully v. Flanagan*, 99 Pa. Superior Ct. 566.

and his testimony was corroborated by that of Ray E. Plunkett, Harold E. Craig, Esquire, and Henry J. Albaugh, Esquire, who had been associated with the firm of Craig, Craig and Ruffner. In particular, Attorney Craig outlined the conference on August 30, 1956, when the parties had agreed as to how title was to be taken and the purchase price paid. Neither of the Dydeks testified, and they did not call any witnesses. The chancellor, Honorable FRANK E. REED, President Judge of the Orphans' Court specially presiding, found the facts substantially as hereinbefore set forth. He also found as a fact that Stanley Dydek was "guilty of bad faith and breach of confidence". In his discussion, the chancellor made the following statement: "This case is without difficulty under the law of this Commonwealth in deciding. Defendants offered no evidence. The evidence of plaintiff, Martin Potoczny, is credible and uncontradicted. Moreover, it is corroborated by the testimony of disinterested witnesses, Ray E. Plunkett, and by Hon. Harold E. Craig and Henry J. Albaugh, Esq., both reputable and highly respected members of the Bar of Beaver County. The testimony of the plaintiff and his witnesses amply and fully supports the Findings of Fact".

The conclusion of the chancellor was that the conveyance from Plunkett to Stanley Dydek on September 13, 1956, created a resulting trust of the southernmost 51 acres of land for Potoczny, and that Stanley Dydek and Millie Dydek held title thereto as trustees for Potoczny. Accordingly, a decree nisi was entered on May 4, 1959, providing "that the defendants, Stanley Dydek and Millie Dydek, permit plaintiff, Martin Potoczny, to enter upon said 150.87 Acres of land for the purpose of obtaining and making a survey of the dividing line between the southernmost fifty-one (51) Acres of said land and the remainder thereof and upon

completion of said survey, that said Stanley Dydek and Millie Dydek shall execute and deliver to plaintiff, Martin Potoczny, a good and sufficient deed of General Warranty for the southernmost fifty-one (51) Acres of said farm and that said Martin Potoczny, plaintiff, upon the execution and delivery of said deed, shall pay to the defendants, Stanley Dydek and Millie Dydek, the sum of $1,430.63,[2] one-third of the real estate taxes on the entire acreage for the years 1957, 1958 and 1959, all without interest, less one-half the cost of the survey of said land".

On May 22, 1959, the period for filing exceptions was extended for an additional 20 days. Appellants' present counsel thereafter entered the case and, June 12, 1959, filed fifteen exceptions to the adjudication. These exceptions were dismissed by the court en banc, and a final decree was entered. This appeal followed.

Appellants' contentions may be resolved into the following propositions: (1) That the testimony of appellee and his witnesses violates the parol evidence rule; (2) that the oral agreement between the parties was not valid under the Statute of Frauds; and (3) that the facts do not support a finding that appellants hold a portion of the land subject to a resulting trust in favor of appellee.

Relying on *Gianni v. Russell*, 281 Pa. 320, 126 A. 791, appellants contend that any oral testimony that appellee was to receive a fractional portion of the entire farm was inadmissible since it would vary the terms of the written agreement of June 1, 1956. Appellants cite *Palone v. Moschetta*, 387 Pa. 386, 128 A. 2d 37, for the proposition that a mere breach of good faith, or a broken promise to do or refrain from doing something in the future is not accounted fraud of the

---

[2] This financial adjustment was based upon a stipulation of counsel.

558

kind that will vary the terms of a written contract. Appellants also cite *Teacher v. Kijurina*, 365 Pa. 480, 76 A. 2d 197, and *Kimmel v. Svonavec*, 369 Pa. 292, 85 A. 2d 146, which followed the *Teacher* case. It should be noted that, in the *Teacher* case, it was specifically stated that "there is no endeavor here to set up an implied or resulting trust". The court below concluded that, by virtue of the written agreement of June 1, 1956, Potoczny obtained an "undivided interest"[3] in the total acreage. This agreement was made as a temporary expedient to bind the contract between Plunkett on the one hand and Potoczny and Stanley Dydek on the other. The evidence conclusively shows, however, that the writing in question was not intended to, and did not properly, state the full agreement between Potoczny and Dydek. Consequently, it was permissible to receive parol testimony explaining and supplementing the agreement: *Ward v. Zeigler*, 285 Pa. 557, 132 A. 798; *Newland v. Lehigh Val. R. Co.*, 315 Pa. 193, 173 A. 822; *Boyd Estate*, 394 Pa. 225, 146 A. 2d 816.

It is well settled that an oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, if the oral agreement is not inconsistent with the integrated contract, and is such an agreement as might naturally be made separately by parties situated as were the parties to the written contract: *McCormick v. Harris*, 130 Pa. Superior Ct.

---

[3] Appellants assert that "An interest cannot be 'undivided' and, at the same time, be a specific fractional portion of a tract of land". We are not troubled by the question of semantics, since it is obvious from a reading of the entire adjudication that "undivided" was used by the chancellor in the popular sense of "Not set off or actually separate by division" rather than in the strictly legal sense of "Designating, or pertaining to, property held by two or more persons by the same title".

175, 196 A. 885. That case states the test to determine whether the alleged parol agreement comes within the field embraced by the written one is to compare the two and determine whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other. Applying such test to the case at bar, we have two parties making a tentative division of a farm, as yet not purchased. In their negotiations with the seller, and at a time when the arrangement between themselves was not completed, it was only natural that they would express the agreement of sale in the broad terms in which we find it here.

It is also well settled that a written agreement may be modified by a subsequent oral agreement and proof thereof be offered without violating the parol evidence rule: *Elliott-Lewis Corp. v. York-Shipley, Inc.*, 372 Pa. 346, 94 A. 2d 47; *Wagner v. Graziano Const. Co.*, 390 Pa. 445, 136 A. 2d 82; *Sipowicz v. Olivieri*, 174 Pa. Superior Ct. 549, 102 A. 2d 175; *Kirk v. Brentwood Manor Homes*, 191 Pa. Superior Ct. 488, 159 A. 2d 482. In the instant case, the written agreement was executed on June 1, 1956. Yet, the final agreement between Potoczny and Stanley Dydek was not made until August 30, 1956, when the parties met in the office of Attorney Craig. It is important to note that the agreement eventually reached at that conference was not merely a restatement of an arrangement previously consummated by the parties themselves, but was a complete agreement arrived at only after discarding several other proposed schemes. Attorney Craig testified in detail with regard to the discussion in his office and the terms of the final agreement, consented to by all the parties. As evidencing a subsequent parol agreement, this testimony, as well as that of appellee to the same effect, was fully admissible.

Appellants also argue that breach of an oral agreement to convey real estate, without more, is insufficient evidence for the court to make a finding of bad faith and breach of confidence, citing *Frick v. McClelland,* 384 Pa. 597, 122 A. 2d 43, and *Harris v. Harris,* 70 Pa. 170. The *Frick* case simply repeats the definition of "bad faith" which appears in *McNair's Petition,* 324 Pa. 48, 187 A. 498. In the *Harris* case it was held that failure to convey land under a parol contract is not fraud. The words "bad faith" imply a breach of faith, or wilful failure to respond to a plain and well-understood obligation: *Nelson v. Board of Trade,* 58 Ill. App. 399. A thing is done in "bad faith" when it is done dishonestly: *Davis v. Pennsylvania Co. for Insurances on Lives, etc.,* 337 Pa. 456, 12 A. 2d 66. This is the sense in which the court below used the expression. The instant factual situation clearly illustrates a wilful failure to respond to a plain and well-understood obligation. Moreover, assuming arguendo that appellants' position is correct, we have in the present case more than a mere breach of an oral agreement. Here, the oral agreement was coupled with a part payment of purchase money and with a taking of possession.

Appellants further contend that the parol agreement was unenforceable because of the Statute of Frauds.[4] They cite *Peel v. Peel,* 303 Pa. 397, 154 A. 813 (wherein no money was paid down at the time of purchase): *Klingensmith v. Klingensmith,* 375 Pa. 178, 100 A. 2d 76 (which involved a mere oral contract to convey lands); and *Philo v. Rought,* 385 Pa. 275, 123 A. 2d 168 (wherein the rights had been abandoned prior to the acquisition of title). In *Simplex Precast Industries, Inc. v. Biehl,* 395 Pa. 105, 149 A. 2d 121, Mr. Justice MUSMANNO, speaking of the Statute of Frauds,

---

[4] Act of March 21, 1772, 1 Sm. L. 389, 33 P.S. 1, et seq.

observed: "The laudable purpose of this guardian of truth is to prevent frauds and perjuries. Occasionally, however, an embattled property owner or prospective purchaser of land, summons the statute to enforce a condition which does not seem to coincide with principles of honesty and fair dealing. In such cases the courts should study the situation involved to make certain that the statute is not being used to perpetrate fraud and perjuries rather than prevent them". It is our view that appellants seek to invoke the statute for this very purpose by attempting to enlist its aid in preventing the admission of thoroughly credible evidence. They are thwarted in this design by the proviso in the Act of April 22, 1856, P. L. 532, section 4, 33 P.S. 2. That statute, which supplements the Act of 1772, directs that all declarations or creations of trusts shall be manifested by writing, or else be void. However, it is then provided: "That where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law . . . then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed". Under this provision a resulting trust in lands may be established by oral testimony: *Seichrist's App.*, 66 Pa. 237; *Lalich v. Bankovsky*, 350 Pa. 441, 39 A. 2d 514; *Geyer v. Thomas*, 364 Pa. 242, 72 A. 2d 89; *Watkins and Miller v. Watkins*, 101 Pa. Superior Ct. 426. And see Restatement (2d), Trusts, §440, comment c. All that is required is that the evidence to support such a trust shall be so clear, precise, convincing and satisfactory that it will satisfy the mind and conscience of a court sitting as a chancellor reviewing the testimony: *Gates v. Keichline*, 282 Pa. 584, 128 A. 490.

Where a transfer of property is made to one person and the purchase price is paid by another, a resulting

trust arises in favor of the person by whom the purchase price is paid: *Godzieba v. Godzieba,* 393 Pa. 544, 143 A. 2d 344. And see *Farmers Trust Co. of Lancaster v. Bevis,* 331 Pa. 89, 200 A. 54; *Gut v. Good,* 178 Pa. Superior Ct. 1, 112 A. 2d 653. The mere payment of the purchase price is sufficient to create a resulting trust: *Purman v. Johnston,* 343 Pa. 645, 22 A. 2d 722; *Fitzpatrick v. Fitzpatrick,* 346 Pa. 202, 29 A. 2d 790; *Gray v. Leibert,* 357 Pa. 130, 53 A. 2d 132. Where, as in the present case, the person to whom the property is transferred advances the purchase price, or a part thereof, as a loan to another, a resulting trust will also arise: Restatement (2d), Trusts, §448; *Kauffman v. Kauffman,* 266 Pa. 270, 109 A. 640; *Gerlach's Est.,* 364 Pa. 207, 72 A. 2d 271; *Arndt v. Matz,* 365 Pa. 41, 73 A. 2d 392; *Jennings v. Everett,* 161 Pa. Superior Ct. 443, 55 A. 2d 569. The fact that the trustee temporarily advances the money for the beneficiary to make the purchase does not preclude a resulting trust, so long as it appears that the advance was made under an agreement for repayment: *New Cumberland Trust Co. v. Grossman,* 131 Pa. Superior Ct. 132, 198 A. 915.

"Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price": Restatement (2d), Trusts, §454. As stated in comment j: "If it appears that the payor and transferee agreed that the payor should have the whole interest in a particular part of the property or a particular estate in the property, there is a resulting trust to the extent of the interest or estate which it was agreed that the payor should have". Cf. *Zahorsky v. Leschinsky,* 394 Pa. 368, 147 A. 2d 362.

Decree affirmed.