### Jenkins v. Jenkins

*Horace Davenport*, for plaintiff.
*Charles King*, for defendant.

TREDINNICK, J., October 15, 1973.—Plaintiff, a 72-year-old widow and mother of defendant, seeks to impose a resulting trust upon defendant in respect to certain real estate. Hearing was held August 8, 1973.

In the summer of 1969, plaintiff occupied rented premises with three of her children, including defendant, and three of her grandchildren. Those members of the household in a position to do so paid plaintiff $20 per week to cover room and board. From these sums, and Social Security funds, plaintiff paid the rent and groceries. At about that time, defendant, then a single man, approached a realtor, Anthony Moles, expressing an interest in purchasing a home. Moles took both plaintiff and defendant to see a property situate at 537 George Street, Norristown, Pa. Both liked what they saw, and defendant asked plaintiff if she would participate with him in the purchase of the property on an equal basis. Plaintiff accepted the proposition. Moles was notified and prepared an agreement of sale. Plaintiff paid over an initial deposit of $100 to Moles, and the agreement was executed by defendant as buyer on August 14, 1969.

The agreement called for an additional deposit of $1,900 by August 19, 1969. The total consideration was $10,000.

On August 15, 1969, at defendant's request, plaintiff withdrew $1,000 from her savings account at the

American Bank & Trust Company, Norristown, and turned this sum over to defendant, who deposited it in his own account. On August 20, 1969, he withdrew $1,900 to make the required payment on account. Settlement occurred on December 8, 1969, at which time defendant received a deed conveying the property to him alone, and executed a purchase money mortgage in favor of Conshohocken Federal Savings and Loan Association to secure the sum of $8,000. At that point, including settlement costs, a total of $2,794 in cash had been expended in the purchase of the property. Defendant explained to plaintiff that her name could not be placed on the deed because of her age.

The parties, together with two other of plaintiff's children, and three of her grandchildren moved into the property shortly before Christmas, 1969. They immediately resumed the prior practice wherein each able-bodied occupant paid plaintiff $20 per week for room and board, and from these sums, together with her Social Security, plaintiff paid the mortgage, virtually all the expenses of the house, and fed the family.

Defendant remained in residence at that property until late 1970 or early 1971, when he left to get married. Plaintiff and others of her family continued to reside there. In January 1972, defendant executed an agreement of sale of the property and advised plaintiff by letter that she would be required to move by March 20, 1972. That precipitated this action, which was commenced March 14, 1972.

Since then, plaintiff continued to live in the property, paying the mortgage thereon, until the spring of 1973, when the property was severely damaged and rendered uninhabitable by a fire. Defendant maintained a fire insurance policy covering the property. The premiums therefor were paid solely by him. The property has not yet been repaired.

The initial problem presented by the case is one of credibility. Defendant agrees that plaintiff gave him money to be used for the purchase of the property, but claims it was a gift. We resolve that issue against defendant, as the evidence clearly establishes to the contrary. Plaintiff's testimony is corroborated by no less than three witnesses, one of defendant's brothers and two of his sisters-in-law. In addition, considering plaintiff's precarious financial situation, it is illogical to assume that she intended a gift of such a relatively large sum.

Ordinarily, the foregoing factual situation would dictate the imposition of a resulting trust upon defendant's legal ownership of the premises in favor of plaintiff. For reasons which will subsequently be apparent, we conclude that a constructive trust to the same end should be declared.

A resulting trust arises by implication of law in order to carry out the presumed intention of the parties, while a constructive trust arises purely by construction of equity, without regard to the intent of the parties, so as to bring an end to unfairness, bad faith or fraud: A. B. Dick Company v. Third National Bank, 17 D. & C. 549 (1931). A resulting trust arises where it is presumed that the payor intends that the transferee shall have no beneficial interest in the property, but that the payor shall have such interest. The payor consents to the use of his money to purchase the property, and consents to the transfer of the property to another. Conversely, a constructive trust arises where the payor's money is used without consent, or used with his consent, but he does not consent to title being taken in another's name: Restatement 2d, Trusts, pages 391-92.

In the present case, it is apparent that plaintiff consented to the use of her money. While at first blush it might appear that she consented to defendant taking

title in his name alone, upon reflection it is clear that her consent or acquiescence was based upon defendant's statement that title could not be put in her name because of her age. In other words, defendant misled plaintiff. Under such circumstances, it cannot be said that plaintiff knowingly consented to the transfer of title to defendant alone. Thus, we are dealing with a constructive, rather than a resulting, trust situation.

The distinction is important in the present case only because of the partial destruction of the premises by fire. It is argued that even if a trust is imposed as to the premises, the proceeds of the fire insurance are not available to plaintiff, or, in other words, are not a part of the res. Such would apparently be the case were this a resulting trust situation, since it appears that a resulting trust is a passive trust with no duties imposed upon the trustee except to convey to the beneficiary: 89 C.J.S., Trusts, §98. However, equitably, in a constructive trust situation, a trustee will be required to exercise reasonable care and skill to preserve the trust property.

Such a standard dictates the procurement of fire insurance to protect the trust from that risk of loss. Cf. Reiff's Estate, 49 D. & C. 119 (1943): Newcomer Estate, 9 D. & C. 2d 99 (1956). That being the case, defendant will be presumed to have insured the property for the benefit of the trust, as well as in his own interests, and the proceeds thereof must be considered part of the res.

Finally, a few words are required concerning the extent of plaintiff's interest in the trust property. Where a transfer of property is made to one person, and a part of the purchase price is paid by another, the trust arising in favor of the person by whom such payment is made is in such proportion as the part paid by him bears to the total purchase price: Potoczny

v. Dydek, 192 Pa. Superior Ct. 550 (1960). The evidence was insufficiently specific in the present case to precisely establish proportions. However, the cash investment of each was approximately equal. In addition, we have found as a fact that there was an expressed intent that their interests in the property be equal. Accordingly, it will be so ordered.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction over the parties and the subject matter.

2. A constructive trust ought to be imposed in respect to premises 537 George Street, Norristown, Pa., and defendant declared trustee of a one-half interest therein for and on behalf of plaintiff, pending conveyance of such interest to plaintiff.

3. Proceeds of the policy of fire insurance paid or payable to defendant on account of a fire loss to the trust premises are a part of the res of the constructive trust.

4. Plaintiff is entitled to the conveyance of legal title to a one-half interest in the subject property.

## DECREE NISI

And now, October 15, 1973, it is ordered, adjudged and decreed:

1. That defendant, Frank B. Jenkins, shall, pending conveyance of a one-half interest in premises 537 George Street, Norristown, Pa., to plaintiff, hold said property, and the proceeds of a fire insurance policy covering said premises, not only on his own behalf, but as trustee of a one-half interest for and on behalf of plaintiff, Elsie Jenkins.

2. That defendant forthwith execute a warranty deed conveying premises 537 George Street, Norristown, Pa., described as follows:

"ALL THAT CERTAIN messuage and lot or piece of land, situate in the Borough of Norristown, County of Montgomery and State of Pennsylvania, bounded and described as follows, to wit:

"BEGINNING at a point on the Northwest side of George Street, at the distance of 120.0′ Southwestwardly from the West corner of George Street and Haws Alley; thence extending by land sold by Keller and Rex to George K. Brecht at right angles to George Street northwestwardly 115.0′ more or less to a 20 foot wide alley laid out by the said Keller and Rex and opened for public use forever. Thence Southwestwardly along the Southeast side of said alley twenty feet to a point, a corner of lands sold by Keller and Rex to Mary A. Wolfinger, now of Edgar E. Schmidt, thence by said Schmidt's land at right angles to George Street, the line passing through the middle of the partition wall between this house and the adjoining lot of Schmidt, Southeastwardly 115.0′ feet more or less to the Northwest side of George Street; thence along the Northwest side of George Street Northeastwardly twenty feet to the point and place of beginning."

to plaintiff and defendant as tenants in common.

Unless exceptions are filed within 20 days of notice hereof, this decree shall become final upon praecipe filed.