## Hermann *v.* Henderson et vir, Appellants.

Argued September 27, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William H. Colvin,* for appellants.

*William A. Blair* and *E. E. Arrowsmith,* for appellee, were not heard.

OPINION BY MR. JUSTICE DREW, October 30, 1945:

This bill was filed to impress a resulting trust on real estate and to force its reconveyance. The property is the home of plaintiff, Ida May Hermann, which had been held by her and her husband as tenants by the entireties and became vested in her by right of survivorship upon the death of her husband in 1941. She occupies the six-room two-story and attic brick dwelling, and by renting part of it and keeping roomers supports herself. The

real estate is situate in Baldwin Township, Allegheny County, Pennsylvania, being all of lot numbered Four (4) and a part of lot numbered Three (3) in the Klein Manor Plan of lots.

In March, 1943, plaintiff, then eighty-one years of age, was suffering from carcinoma and was confined to the hospital for one month where she was taking radium treatments. Defendant, Olive M. Henderson, one of three nieces, admittedly the favorite, visited her in the hospital every day and said she was "taking care of" her.

Plaintiff, prior to the death of her husband, had little or no experience in business matters, and after his death relied upon and placed great confidence and trust in her niece, defendant, for assistance in the management of her business affairs.

On March 10, 1943, while confined in the hospital, and "afflicted with cataracts upon her eyes, . . . which conditions cause her eyesight to be foggy or cloudy, and that she cannot read without the use of eye glasses and that even with the use of glasses she is only able to read with great difficulty" the niece-defendant and a notary public who was also secretary of a lawyer, appeared in plaintiff's room with a deed. The secretary said she did not know who made the request to have the deed prepared. Plaintiff denied all knowledge concerning it. The deed conveyed plaintiff's home, all the real property she had, to her niece and husband, the defendants. There was no consideration given for the deed. There is conflict as to what actually took place at the time the deed was signed, but what was said and done clearly corroborates the testimony of plaintiff. She said that when she came to her room on that day after receiving a treatment her niece and the notary were waiting for her; that she signed the deed because her niece told her it "was just to protect you". This was confirmed by a statement of her niece that it was "The only thing to protect her and take care of her as long as she lives and to bury her." It is admitted by all that plaintiff said at that time: "If

I can't trust Olive [niece-defendant] who in the name of God can I trust." There is no doubt that plaintiff was misled by one upon whom she had a right to rely and that she was thus influenced to do a thoroughly improvident thing. She certainly did not understand the nature and character of her act. And she was not given the assistance she was entitled to from the one upon whom she completely relied. The deed from plaintiff to defendants was promptly recorded, the very next day, March 11, 1943, in the office of the Recorder of Deeds of Allegheny County.

After leaving the hospital plaintiff went to the home of her niece-defendant where she remained a short time. She then went to her own home, the subject of these proceedings, where she has since resided. She has paid all the taxes on the property and maintained herself, receiving no help from defendants.

Several months after plaintiff left the hospital she learned from a neighbor that she had given her niece a deed for this property, and she immediately consulted a lawyer who confirmed the fact, whereupon she at once demanded a reconveyance.

Plaintiff expressed her trust and confidence in this niece by giving her access to her safety deposit box in which she had some personal property, bonds, stocks, and an interest in a building and loan association. During the time plaintiff was in the hospital the niece removed these things and placed them in her own safety deposit box. This was done without plaintiff's request, permission or knowledge. They were returned only after demand by the attorney for plaintiff.

Defendants having refused to reconvey the real estate to plaintiff, this bill was filed to compel them to do so, to which an answer was made by defendants. After hearing, the Chancellor entered a decree nisi directing that such reconveyance be made. The decree and findings of fact and conclusions of law were sustained by the court en banc, and from its final decree this appeal was taken.

The defendants made no attempt to assert any right to the property after they got the deed. The niece-defendant knew that in accepting the conveyance she was charged with the duty of using the property for the sole use and benefit of her aunt. Her mistake lies in contending that after the death of her aunt she and her husband are entitled to ownership of the property. She apparently had the same thought concerning the stocks and bonds until compelled to return them.

The learned Chancellor said in his discussion: "From the evidence, it clearly appears that what plaintiff intended to do and what she thought she had done was to execute a deed of trust for her property and not a deed in fee simple. The conveyance was made solely for the benefit of the grantor. . . . The testimony negatives any idea that the conveyance was a gift to the defendants. They have exercised no dominion whatsoever over the property nor have they incurred any expense in connection therewith. Neither by their answer, their testimony nor their conduct have they claimed or asserted any rights in the property conveyed to them. The only reasonable conclusion that can be drawn from the testimony is that the defendants received the property in trust for the sole benefit of the grantor; that a confidential relationship existed between the grantor and her niece; that plaintiff reposed a justifiable trust in her niece and that the conveyance of her property was intended only for her convenience and benefit and passed no rights whatever to the grantees."

The giving of the deed constituted a resulting trust for the benefit of plaintiff; the conveyance passed no present interest to defendants, and was revocable at the will of plaintiff: *Rick's Appeal,* 105 Pa. 528; *Long v. Tradesmen's National B. and T. Company,* 108 Pa. Superior Ct. 363, 165 A. 56. The Statute of Frauds (§4, Act of April 22, 1856, P. L. 532) expressly excepts from its operation resulting trusts, such as the law implies: *Watkins and Miller v. Watkins,* 101 Pa. Superior Ct. 426.

It is not necessary to consider the case from the standpoint of a trustee ex maleficio.

It is clear that defendant niece never intended to permit plaintiff to dispose of any of her property, by will or otherwise, without her consent and that she intended to retain ownership for herself and husband after plaintiff's death regardless of her desire. That was never the intent of plaintiff, and it is a great abuse of a trust and confidence. We are in accord with the decision of the learned court below.

Decree affirmed.