478 A.2d 1328

Nancy J. GALFORD, Executrix of Estate of Leonard
C. Burkhouse, Deceased

v.

Karl E. BURKHOUSE, Appellant.

ESTATE OF Leonard C. BURKHOUSE,
Burkhouse, Deceased.

Appeal of Karl E. BURKHOUSE.

Superior Court of Pennsylvania.

Submitted Nov. 18, 1983.

Filed June 8, 1984.

Patrick J. Kronenwetter, Emporium, for appellant.

Deborah W. Babcox, Smethport, for appellee (at No. 2007) and for participating party (at No. 2008).

Before McEWEN, HESTER and LIPEZ, JJ.

McEWEN, Judge:

This appeal provides a reflection of a family in turmoil and focuses upon the effect of two documents, namely, a deed and a will. The distinguished President Judge Paul B. Greiner provides in his able opinion a recitation of the factual history which reveals the roles of the parties to the appeal as well as the issues presented by the appeal:

> [Leonard and Mena Burkhouse were the parents of Nancy Galford and Mary Fowler. Mina Burkhouse had a son by a prior marriage, Marcellus Haupt. Leonard Burkhouse had two children by a prior marriage, Karl Burkhouse and Dorothy Arlene Blinzer.]
>
> The dispute among the parties which has given rise to both the cases under consideration here arose out of certain events that occurred in March and April of 1979. Both Leonard C. Burkhouse and his wife Mina were gravely ill, and it appeared that Mina, especially, might

require extended care in a nursing home at considerable expense.

Plaintiff Leonard and Mina at the time owned certain real and personal property located in Shippen Township, Cameron County, Pennsylvania. The real property consisted of approximately fifteen acres of land and a house, subject to a mortgage in favor of the Bucktail Bank and Trust Company of approximately $10,300.00.

Testimony by Leonard at a deposition taken June 3, 1980, and introduced at trial as well as the testimony at the May 20th hearing, established that Leonard became concerned about how to preserve this property so that it could be used to pay for his wife's care in case he died. He did not, however, want the property to become subject to attachment or lien by any welfare agency. Accordingly, Leonard discussed with several of the children the question of which of them might be best qualified to manage the property for Leonard's benefit and especially for his wife's benefit. Apparently because Karl was a businessman who owned and managed other real properties and was fairly well off as compared to some of the other children, Leonard decided to deed the property to Karl. Leonard C. and Mina C. Burkhouse therefore executed on April 3, 1979, a deed conveying all their interest in the real estate referred to above to Karl. On the same day, Karl executed a bond and warrant to the Bucktail Bank and Trust Company pledging his personal liability on the mortgage indebtedness originally incurred by Leonard C. and Mina, who were to remain jointly and severally liable on the indebtedness. The Bucktail Bank and Trust Company simultaneously executed a waiver of the nonassumable provisions of the mortgage from Leonard C. and Mina C. Burkhouse, thereby allowing the transfer of title of the real estate to Karl E. Burkhouse subject to the lien of mortgage of the real estate. Mina Burkhouse remained in the hospital and subsequently died in December 1979. Leonard, however, was hospitalized for some time in the spring of 1979 and unexpect-

edly began to recover somewhat. Following his return home in late May of 1979, several meetings were held between Leonard and the various children to discuss what should be done with the property [which had been deeded several weeks earlier to Karl] after Leonard's death, as earlier recited. These conversations were inconclusive and conflicting testimony concerning them was presented at trial. Leonard himself stated, however, that sometime during the summer of 1979 he decided that the property should go to his daughter Nancy Galford, who had agreed to give up her job and move with her family into the house with her father in order to take care of him. Leonard, in his deposition, claimed that Karl on more than one occasion agreed to do as his father wished and convey the property to Nancy but he never did so.

In the face of these persistent refusals by Karl, Leonard filed the within action against him in early February 1980 [seven months before his death]. On February 11, 1980 Karl executed a "Declaration of Trust" in which he acknowledged that the transfer of property to him in April 1979 by his father had been a conveyance to him as Trustee, but he declared that the terms of the trust were:

(a) that the property be maintained as a home for Leonard during his lifetime if possible, or sold, if necessary, to provide for Leonard's maintenance and care, and

(b) that upon Leonard's death the property was to be divided equally among Karl, Arlene Blinzler, Mary Fowler, Nancy Galford, and Marcellus Haupt.

In the meantime, Leonard's daughter Nancy Galford had given up her job and moved with her family into the family home to care for her father. Leonard remained bedridden, but apparently at no time was his mind affected by his illness. No testimony was presented at trial to the effect that Leonard's intellect was in any way weakened by his illness. Uncontroverted testimony at trial indicated that he continued to hold office as Chairman of the Portage Township Board of Supervisors, and to perform the duties of that office as best he could in view of

his bedridden state until a few days before he died in September 1980.

The will naming Nancy Galford as Executrix and sole beneficiary of Leonard's estate, which is the subject of the appeal from the Register of Wills in this action, was prepared at the direction of Leonard by the attorneys for the plaintiff in the above described equity action. It was signed by Leonard and witnessed by the attorneys at the time his deposition was taken on June 3, 1980. The contestants maintain that this will was made while Leonard was "under the undue influence of Nancy J. Galford and her husband Craig Galford." Both Karl and Arlene testified that the alleged "undue influence" consisted of Nancy's threatening to cease taking care of her father unless she was given the house and fifteen acres.

Arlene Blinzler testified at the May 20, 1981, hearing that during a visit to her father at his home on May 30, 1980, she drafted, at his request, a document that he then signed and which the contestants to the June 3, 1980, will allege is the only valid will executed by decedent. This will purports to set forth Leonard's desire that upon his death Karl is to "divide all my belongings 4 ways, Nancy, Mary, Karl and Arlene." The contestants take the position that since Leonard's signature on the June 3, 1980, will was procured by undue influence the earlier will in Arlene's writing is valid, and therefore even if the proponents of the June 3, 1980, will are successful in their equity action, under the will dated May 30, 1980, the property should be divided four ways, and distributed to Karl, Arlene, Mary, and Nancy. (citations to record omitted)

Appellants have taken these appeals, which have been consolidated, from the final decree of the Court of Common Pleas which (1) imposed a resulting trust upon real property to which appellant Karl E. Burkhouse held legal title; (2) directed Karl to reconvey the realty to the estate of his deceased father, Leonard C. Burkhouse; (3) affirmed the grant of letters testamentary to appellee Nancy Galford, the daughter of Leonard; and (4) dismissed the Petition for

Citation Sur Appeal filed by appellants Karl Burkhouse, D. Arlene Blinzler and Mary Fowler from the action of the Register of Wills which admitted to probate the instrument of June 3, 1980 as the last will and testament of Leonard Burkhouse and granted letters testamentary thereon to Nancy Galford.

The first of the two actions involved in this appeal was an equity action commenced by Leonard Burkhouse seeking an order directing his son Karl Burkhouse (a) to reconvey real estate Leonard had deeded to Karl in the Spring of 1979, or, in the alternative (b) to convey the property to Nancy either immediately or upon the death of Leonard. On September 1, 1980, prior to a hearing on the matter, Leonard died and Nancy, the executrix of his estate pursuant to the will executed on June 3, 1980, was substituted as plaintiff.[1]

The second action arose when Karl, Arlene and Mary appealed from the admission of the will, dated June 3, 1980, to probate and the issuance of letters testamentary thereon to Nancy Galford. As noted in the trial judge's opinion, appellants alleged that the will had been procured by the "undue influence, duress and constraint" of Nancy and her husband and sought admission to probate of a document dated May 30, 1980, which had been prepared by Arlene and signed by Leonard.

The trial judge ruled in the equity action that while the claimed oral trust of the realty was void under the Statute of Frauds, a resulting trust in favor of the estate of Leonard was to be imposed upon the realty. As for the will contest, the court concluded that appellants had failed to establish any "undue influence" and held, therefore, that the will dated June 3, 1980, had been properly admitted to probate.

Appellants argue that the chancellor erred in concluding that the transfer of the realty to Karl created a revocable trust and that the will admitted to probate was not the product of undue influence. Appellants also seek an order

---

1. D. Arlene Blinzler, Mary J. Fowler, Nancy Galford and Marcellus W. Haupt were joined as additional defendants by the defendant.

directing that the writing drafted by Arlene and signed by Leonard be admitted to probate as the Last Will and Testament of Leonard.

The adjudication of the trial court has ably disposed of the probate issues and we, therefore, confine our discussion to the determination of the Chancellor that the real property titled in Karl's name was subject to a resulting trust for the benefit of the estate of Leonard. On appeal, appellants have formulated the issue as whether the evidence supports a finding that the oral trust was revocable. Our review of the Chancellor's adjudication leads us to conclude that appellants misapprehend the reason that Karl was ordered to convey the property to Leonard's estate. The Chancellor specifically stated that he was unable to determine the terms of the oral trust, including whether Leonard had reserved a power of revocation. The trial court was not, however, thereby restrained from directing Karl to reconvey the property since the question of whether Leonard intended to retain a power of revocation, when he attempted to create an oral trust of the real property, was irrelevant to the issue of whether the property was subject to a resulting trust for the benefit of the estate of Leonard.

The scope of review to be employed by this Court when presented with an adjudication in equity is well established. As observed by our distinguished colleague Judge Gwilym Price:

> The chancellor's findings of fact, affirmed by the court en banc, have the effect of a jury verdict and will not be reversed on appeal if adequate evidence is present to support them and they are not premised on erroneous inferences and deductions or in error of law. *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976); *Onorato v. Wissahickon Park, Inc.*, 430 Pa. 416, 244 A.2d 22 (1968). Thus, our function is not to substitute our view for the chancellor's but, rather, to determine whether a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion of the chancellor. *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978); *Payne*

*v. Kassab,* 468 Pa. 226, 361 A.2d 263 (1976). Nevertheless, conclusions of law or facts, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable. *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273 (1976); *In re Estate of Thomas,* 463 Pa. 284, 344 A.2d 834 (1975).

*Krosnar v. Schmidt Krosner McNaughton,* 282 Pa.Super. 526, 534, 423 A.2d 370, 374 (1980). *Accord Dailey's Chevrolet v. Worster Realties, Inc.,* 312 Pa.Super. 275, 280–81, 458 A.2d 956, 959–60 (1983); *In Re Irrevocable Inter Vivos Trust of Hanley,* 307 Pa.Super. 153, 162, 452 A.2d 1360, 1365 (1982).

The Pennsylvania Statute of Frauds, Act of April 22, 1856, P.L. 532, § 4, 33 P.S. § 2, provides that all declarations or creations of trusts of real property are void in the absence of a writing evidencing their creation.[2] Therefore, while all parties to this litigation agree that Karl held only bare legal title to the realty while Leonard had both the beneficial interest and possession, no valid trust was created due to the operation of the Statute of Frauds. *See Huber v. Wagner,* 284 Pa.Super. 133, 135, 425 A.2d 456, 457 (1981).

Where an express trust fails, a resulting trust may be imposed by operation of law. *See Borden v. Baldwin,* 444 Pa. 577, 584, 281 A.2d 892, 896 (1971). Section 411 of the Restatement (Second) of Trusts (1959) provides:

Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee

2. The Act of April 22, 1856, P.L. 532, § 4, 33 P.S. § 2 provides:
§ 2. **Declarations of trusts and grants thereof to be in writing**
All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, That where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed.

should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trusts fails for illegality.[3]

*See also* Bogert, Law of Trusts and Trustees, § 468 (2d ed revised 1977). *Accord Hermann v. Henderson*, 353 Pa. 39, 40, 44 A.2d 254, 255 (1945). *See also Yuhas v. Schmidt*, 434 Pa. 447, 456, 458, 258 A.2d 616, 621–622 (1969); *In re Estate of Summers*, 424 Pa. 195, 197, 226 A.2d 197, 199 (1967); *Eckart v. Hubbard*, 184 Mont. 320, 327, 602 P.2d 988, 992 (1979); *Brelsford v. Scheltz*, 564 S.W.2d 404, 406 (Tex.Civ.App.) (1978). The Statute of Frauds specifically exempts such trusts, implied in law, from its operation. *Semenza v. Alfano*, 443 Pa. 201, 204, 279 A.2d 29, 31 (1971); *Hermann v. Henderson, supra*, 353 Pa. at 40, 44 A.2d at 255 (1945); *Potoczny v. Dydek*, 192 Pa.Super. 550, 561, 162 A.2d 70, 76 (1960); 33 P.S. § 2. Parole evidence is, therefore, admissible to show the circumstances under which a resulting trust arose. *Geyer v. Thomas*, 364 Pa. 242, 243, 72 A.2d 89, 90 (1950); *Potoczny v. Dydek, supra*, 192 Pa.Super. at 561, 162 A.2d at 76. *See also McHenry v. Stapleton*, 443 Pa. 186, 190, 278 A.2d 892, 894 (1971). " 'In order to establish, by oral testimony, a resulting trust in real estate against the person holding the legal title the evidence must be 'clear, explicit and unequivocal' or, as it has been otherwise stated, 'clear, precise and unequivocal' or 'clear, precise and convincing and satisfactory' or 'clear, precise and indubitable' " *Geyer v. Thomas, supra*, 364 Pa. at 243, 72 A.2d at 90 *quoting Wosche v. Kraning*, 353 Pa. 481, 483, 46 A.2d 220, 222 (1946). *Accord In Re Irrevocable*

**3.** In order to impose a resulting trust upon the res, the Chancellor need not find fraud, undue influence, duress, mistake, confidential relationship or unjust enrichment which are required in order to impose a *constructive trust* upon the property. *See and compare: Huber v. Wagner,* supra 284 Pa.Super. at 137, 425 A.2d at 458 (1981); *Kohr v. Kohr,* 271 Pa.Super. 321, 327, 329, 413 A.2d 687, 690–691 (1979); *Moreland v. Metrovich,* 249 Pa.Super. 88, 94, 375 A.2d 772, 775 (1977); Restatement (Second) of Trusts, § 44 (1959).

*Inter Vivos Trust Agmt of Hanley,* 307 Pa.Super. 153, 170, 452 A.2d 1360, 1369 (1982) aff'd. *sub nom. Siebert v. Bird,* 503 Pa. 119, 468 A.2d 1093 (1983); *Lapayowker v. Lincoln College Preparatory School,* 386 Pa. 167, 170, 125 A.2d 451, 454 (1956); *Grubb v. Delathauwer,* 274 Pa.Super. 511, 516, 418 A.2d 523, 526 (1980); *Potoczny v. Dydek, supra* 192 Pa.Super. at 561, 162 A.2d at 76.

■ The testimony of all parties to the instant case was in agreement that Leonard intended to transfer *only* bare legal title to Karl at the time he executed the deed to the realty. Karl, moreover, executed a document attesting to the fact that he held title to the realty subject to a trust for the benefit of Leonard. Such evidence was clearly sufficient to establish a resulting trust in favor of Leonard or his estate. "The general principles involving resulting trusts are set forth in the Restatement (Second) of Trust (1959). Section 404 states: 'A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.' " *Yuhas v. Schmidt, supra* 434 Pa. at 456–458, 258 A.2d at 621–622. Accord: *In re Estate of Summers, supra* 424 Pa. at 199, 226 A.2d at 199; *Policarpo v. Policarpo,* 410 Pa. 543, 546, 189 A.2d 171, 173 (1963).[4]

■ Appellants sought to establish that the "beneficial interest [was] otherwise effectively disposed of" by oral evidence of Leonard's intent at the time of the execution of the deed that the property would ultimately pass to his children. The Chancellor found that the evidence offered to establish such intent was so ambiguous and conflicting as to prevent any determination of Leonard's intent concerning

---

**4.** This rule is subject to the exception, creditors, not applicable to the instant case, that where the conveyance was for the purpose of defrauding no resulting trust arises. See *In Re Estate of Summers, supra,* 424 Pa. at 199, 226 A.2d at 199; *Policarpo v. Policarpo, supra,* 410 Pa. at 546, 189 A.2d at 172.

the ultimate disposition of the realty. We agree. Moreover, while parole evidence concerning the circumstances surrounding the execution of a deed is admissible to challenge the legal title and establish a resulting trust, such parole evidence cannot be the basis for an oral express trust which would be violative of the Statute of Frauds.[5] The Chancellor, therefore, properly declared the realty to be subject to a resulting trust in favor of the estate of Leonard. *See In Re Estate of Smith,* 435 Pa. 258, 262, 256 A.2d 130, 132 (1969).

Decree affirmed.

5. While not dispositive of the issue, we note that all parties agree that the initial and primary intent of Leonard in deeding the property to Karl subject to the oral trust was to provide for Leonard's care and maintenance. It was for this very purpose that Leonard sought to have Karl deed the property to Nancy in exchange for her promise to leave her employment and care for Leonard.