J-A30027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN F. RAGANO, EXECUTOR OF THE ESTATE OF CATALDO VASAPOLLI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| FABRIZIO SPAGNOLO AND ELISA D. SPAGNOLO, CO-ADMINISTRATORS OF THE ESTATE OF LUIGI SPAGNOLO | |
| v. | |
| A.P.S. RECYCLING, INC. | |
| APPEAL OF: FABRIZIO SPAGNOLO AND ELISA D. SPAGNOLO, CO-ADMINISTRATORS OF THE ESTATE OF LUIGI SPAGNOLO | |
| | No. 1026 EDA 2014 |

Appeal from the Judgment Entered June 4, 2014
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 10539 CV 2008

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:　　　　　　　　　**FILED APRIL 30, 2015**

Appellants Fabrizio Spagnolo and Elisa D. Spagnolo, co-administrators

of the Estate of Luigi Spagnolo, deceased, appeal from the June 4, 2014

judgment determining that the Estate of Cataldo Vasapolli, represented by

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellee John F. Ragano, Executor,[1] was the owner of certain disputed real estate and personal property by virtue of a resulting trust.[2] After careful review, we vacate the June 4, 2014 judgment and the portion of the trial court's January 28, 2014 order finding a resulting trust and directing conveyance of the real estate and attendant personal property and business license. We further remand for a new trial.

A summary of the factual and procedural history of this case follows. In June 2004, brothers-in-law Cataldo Vasapolli and Luigi Spagnolo entered into an agreement regarding the purchase of certain real estate at 2 Katz Road in the Borough of Stroudsburg, Monroe County, Pennsylvania, which was the site of a scrap metal and recycling business. A dispute over the nature and extent of that agreement is at the heart of the litigation underlying this appeal. Specifically, on June 29, 2004, the subject property, including a bill of sale for personal property connected with the recycling business and a junkyard operating license, was sold by Unity Bank to Spagnolo for a purchase price of $1,012,500.00. Vasapolli paid the

_____

[1] Ragano, an attorney, also represented Vasapolli in various matters prior to his death.

[2] The judgment and the trial court's January 28, 2014 order involve two distinct matters that were tried together. Only paragraphs one, two and three of the January 28, 2014 order, and the portion of the June 4, 2014 judgment order referencing them, are pertinent to this appeal. We, therefore, treat paragraphs one, two and three as a separate order and final judgment, which is the subject of this appeal. *See Moyer v. Gresh*, 904 A.2d 958, 961 n.1 (Pa. Super. 2006) (treating distinct matters contained in a single order as separate orders).

purchase price and closing costs.[3]  At the same time, Spagnolo executed a promissory note and mortgage for the amount of the purchase price in favor of Vasapolli.[4]  The note and mortgage contained no provision for interest or periodic payment, the note being payable on demand.[5]

On November 9, 2005, Ragano, acting as Vasapolli's lawyer, wrote to Spagnolo's attorney, Joseph Wiesmeth, Esquire, requesting a contract of sale of the 2 Katz Road property from Spagnolo to Vasapolli be prepared. Spagnolo responded on November 11, 2005, through his attorney that he believed the property should remain in his name.

On October 31, 2008, Vasapolli filed a complaint against Spagnolo alleging breach of an oral, or alternatively an implied, contract to convey the 2 Katz Road property.  Vasapolli claimed that at the time of the real estate transaction, he contemplated eventually executing a real estate exchange that would be recognized by the Internal Revenue Service (IRS) for tax purposes under Section 1031 of the Internal Revenue Code but had not yet sold the property whose proceeds were to be used to purchase the 2 Katz Road property.  Vasapolli also sought equitable remedies of estoppel,

---

[3] The purchase price and closing costs totaled $1,036,283.10.

[4] The mortgage was not recorded until May 30, 2008.

[5] Near the time of the closing, Attorney Wiesmeth incorporated A.P.S. Recycling, Inc. as a Pennsylvania subchapter "S" corporation with Spagnolo and Vasapolli each obtaining a 50% share.  The corporation was formed to operate a recycling and scrap-yard business at the 2 Katz Road property, with Spagnolo handling the management of the operations.

constructive trust, accounting and *quantum meruit*. On March 11, 2009, Spagnolo committed suicide. Vasapolli died on June 9, 2009. Estates were raised for both decedents and their respective personal representatives, Ragano and Appellants, were substituted as parties. Business operations of A.P.S. Recycling, Inc. ceased following Spagnolo's death until they were resumed in December 2009 by Ragano on behalf of the estate of Vasapolli. On May 7, 2010, Appellants filed an answer together with new matter raising, *inter alia*, the defenses of the statute of frauds and the parol evidence rule, and together with a counterclaim to quiet title. Additionally, Appellants filed a joinder complaint against A.P.S. Recycling, Inc., seeking fair rental value and back rent for the period of operation after Spagnolo's suicide.

Trial on the matter was held on September 24-25, 2013.[6] On January 28, 2014, the trial court determined, "[t]he Estate of Cataldo Vasapolli is the owner of 2 Katz Road, Stroudsburg, Pennsylvania by virtue of a resulting trust." Trial Court Opinion and Order, 1/28/14, at 26, ¶ 1. The trial court also determined the estate of Vasapolli was the beneficial owner of the personal property indicated on the bill of sale from the June 29, 2004

---

[6] On May 7, 2010, Appellants filed an application to dissolve the A.P.S. Recycling, Inc., corporation. The respondent, Ragano, Executor of Cataldo Vasapolli's estate, opposed dissolution. Trial on the matter was held at the same time as trial on Vasapolli's complaint. The trial court's grant of dissolution and January 28, 2014 order requiring an accounting is the subject of the companion appeal at 1030 EDA 2014.

transaction. *Id.* at ¶ 2. Appellants were directed to execute the required documents to transfer title to the real estate, personal property and Junkyard license to the Estate of Cataldo Vasapolli. *Id.* at ¶ 3.

On February 7, 2014, Appellants filed a timely post trial motion, which the trial court denied on March 3, 2014. Appellants filed a notice of appeal on March 28, 2014.[7]

On appeal, Appellants raise the following issues.

> I. Was the [t]rial [c]ourt in error when it admitted unreliable, biased, and inadmissible hearsay testimony to establish a [r]esulting [t]rust?
>
> II. Was the [t]rial [c]ourt in error when it found that a [r]esulting [t]rust had been established in order to complete a 1031 exchange for "tax purposes" when such an exchange would have been illegal?
>
> III. Was the [t]rial [c]ourt in error and abuse [sic] its discretion when it provided remedies that had not been requested by either party?

Appellants' Brief at 7.

_____

[7] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. In its May 8, 2014 Rule 1925(a) statement, the trial court referenced its January 28, 2014 opinion as containing the reasons for its decisions. Additionally, by orders dated May 2, 2014 and May 22, 2014, this Court noted Appellants' appeal was premature and directed Appellants to praecipe the Monroe County Prothonotary to enter judgment on the trial court's January 28, 2014 verdict order. By stipulated order, the trial court entered final judgment on June 4, 2014, perfecting the appeal. *See* Pa.R.A.P. 905(a)(5) (noting a premature appeal is subsequently perfected when a final, appealable order is entered).

Appellants first aver the trial court erred in admitting, over their objection, testimony from Ragano about statements made to him by Vasapolli concerning an oral agreement he had with Spagnolo relative to the subject real estate transaction. *Id.* at 15. "[O]ur standard of review in assessing the trial court's evidentiary rulings is extremely narrow. Such decisions are referred to the [trial] court's discretion, and will not be disturbed absent both error and harm or prejudice to the complaining party." *Kopytin v. Aschinger*, 947 A.2d 739, 744 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 2 (Pa. 2009).

Prior to trial, Appellants filed a motion *in limine* seeking to preclude testimony from Ragano, based on statements from Vasapolli that "the agreement between Vasapolli and Spagnolo was that Spagnolo would [convey the property to him] at the appropriate time for tax reasons." Motion *in Limine*, 5/17/13, at 3, ¶ 6. Appellants claimed the evidence violated the parol evidence rule and constituted inadmissible hearsay. *Id.* at 3, ¶¶ 8, 9. The trial court denied the motion without prejudice to raise the issue at trial. Trial Court Order, 8/5/13, at 1. Appellants renewed their hearsay objection at trial. N.T., 9/24/13, at 17. Ragano, through his attorney, asserted the testimony was admissible under Pennsylvania Rule of

Evidence 803 as showing Vasapolli's then existing state of mind, including intent, plan, motive and design.[8] *Id.* at 18; **see also** Ragano's Brief at 9.

Rule 803 provides as follows.

> **Rule 803. Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> …
>
> **(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.
>
> …

Pa.R.E. 803(3).

---

[8] The trial court overruled Appellants' objection relative to admission of parol evidence and allowed the testimony over Appellants' hearsay objection, deferring its decision "as to whether or not it's hearsay, or whether it's an exception to the rule." N.T., 9/24/13, at 20. The trial court never made a subsequent formal ruling on the objection. However, it apparently accepted and relied on Ragano's testimony of Vasapolli's statements in its finding that a resulting trust was created. "[The trial court] further find[s] [] Ragano's testimony of the initial Agreement between [Vasapolli and Spagnolo] as to the purchase and ownership of the real property to be credible." Trial Court Opinion, 1/28/14, at 18. We note the trial court does not address the basis for its evidentiary ruling in its January 28, 2014 opinion or its May 8, 2014 Rule 1925(a) opinion.

We have described the applicability of this exception as it pertains to a declarant's state of mind as follows.

> The exception, of course, is inapplicable if the statements are not being introduced for the truth of the matter asserted, as such statements are not hearsay. However, where a statement is being introduced for the truth of the matter asserted, then it may be admissible if it is a declaration concerning "the declarant's then existing state of mind … such as intent, plan, motive, design, mental feeling, pain, and bodily health." Pa.R.E. 803(3). Of course, the statement must be relevant to the issue in the case. The statement must be instinctive, rather than deliberate[.] Moreover, a statement relating to past events based on memory or belief is not permissible to establish the truth of those events, absent relation to the execution, revocation, identification, or terms of the declarant's will.

**Schmalz v. Mfrs. & Traders Trust Co.**, 67 A.3d 800, 804 (Pa. Super. 2013) (some internal quotation marks, citations, and footnote omitted).

Instantly, the relevant questioning proceeded in the following manner.

> [BY RAGANO'S ATTORNEY] Q. Did they have any business dealings?
>
> [BY RAGANO] A. Yes.
>
> Q. What was the nature of the business dealings between the two brothers-in-law that you were aware of?
>
> …
>
> A. Apparently, there was a recycling facility up in Pennsylvania, which is the subject of this lawsuit. They had a business relationship involving that property and the corporation that ultimately ran the recycling facility.

Q. Now, the record is going to show that there was a property deeded to Mr. Spagnolo on June 29th of 2004. Did you have any function, as attorney for Mr. Vasapolli, in that transaction?

A. At that time, no.

Q. Did you even know about it at that time?

A. I don't believe so.

Q. Did you learn about it subsequently?

A. Yes, I did.

Q. And how did you learn about it subsequently?

A. Well, after, I guess, in 2004 or 2005, Mr. Vasapolli told me that he –

[APPELLANTS' COUNSEL]: Objection, Your Honor, as to hearsay evidence.

…

Q. Mr. Ragano, do you recall the question?

A. No.

Q. Okay. Did Mr. Vasapolli discuss with you the property that you purchased in Stroudsburg at any time?

A. Yes.

Q. When was that?

A. In 2000 -- probably early 2005, late 2004. I'm not sure.

Q. And what did he tell you?

A. He told me that he had purchased this property, and that he was going to use it as part of a 1031 exchange; not that he purchased it, but that he put it in his brother-in-law's name. So that, at a later date, when he sold the property in New York, on which he would realize a substantial capital gain, he could then utilize this property as part of the exchange to defer his tax.

Q. Is that the first that you found out about the property?

A. Yes.

N.T., 9/24/13, at 16-21.

The trial court noted that, other than the executing documents, *i.e.*, the deed, note and mortgage, there was no written expression of an agreement between Spagnolo and Vasapolli respecting the subject transaction. Trial Court Opinion, 1/28/14, at 14. From the surrounding circumstances, the trial court found that an oral agreement existed. *Id.*

> We find an oral agreement existed between Vasapolli and Spagnolo with regard to the real property and operation of A.P.S. However, both men are deceased and there is no way to know exactly what that oral agreement entailed, other than by parol evidence. Therefore, we are bound by the written documents, and the parol evidence that supports or refutes the existence of a resulting trust.

*Id.* The trial court relied on the cited testimony to conclude the parties agreed that Spagnolo would re-convey the property to Vasapolli at a future date to effect a 1031 exchange. *Id.* at 16

> Furthermore, the purchase of the real property was not intended to be for Spagnolo, despite the existence of the Mortgage and Note. [] Ragano

- 10 -

testified that Vasapolli intended the taking of title in Spagnolo's name to be held only until such time as Vasapolli arranged a 1031 exchange of real property, at which time the real property would be conveyed back to Vasapolli and the Mortgage and Note extinguished. We find this testimony of an oral agreement credible.

*Id.*

Appellants argue the trial court's acceptance of Ragano's testimony about Vasapolli's statements to him, uttered six months after the referenced events, about his intentions regarding the real estate transaction was in error. Appellants' Brief at 14.

> The statement Vasapolli allegedly made to Ragano was not made spontaneous with the impression. It was a self-serving statement made long after the initial sale. It was not about a "then existing" mental condition. Even if Vasapolli had made the statement, it was done far past when it could have been used to fall within this exception.

*Id.* at 18.

> The Trial Court's acceptance of this testimony under Pa.R.E. 803(3), the "Then Existing Mental, Emotional, or Physical Condition" exception, is so broadly read as to make just about any hearsay statement admissible and to allow any statement made years after an incident to paint an impression more favorable to the declarant.

*Id.* at 17.

We agree the trial court's evidentiary ruling was in error. It is undisputed that the testimony of Vasapolli's statements was for the truth of the matter asserted and constituted hearsay evidence. Ragano offered

Vasapolli's statements to show the substance of an oral agreement between Spagnolo and Vasapolli. **See, e.g.**, **Schmalz**, **supra** at 803-804 nn. 3, 5 (noting distinction between state-of-mind non-hearsay evidence offered to explain listener's reaction and not the truth of the matter asserted, and the state-of-mind exception to hearsay rule where declarant's state of mind is offered for truth of the matter asserted).  To be admissible, the exception under Rule 803(3) would have to apply.  Ragano insists the exception applies because, "Vasapolli had discussions with Attorney Ragano that concerned his then existing state of mind as to how the deal should be structured, including Vasapolli's 'intent, plan, motive, [and] design.'" Ragano's Brief at 10.  We disagree.

First, we note that for the state-of-mind exception to apply, the declarant's intent or plan must be relevant to the issue in the case. **Schmalz**, **supra**.  In this case, it is Vasapolli's state of mind at the time of oral agreement with Spagnolo that is relevant.  However, Ragano's testimony concerned Vasapolli's expression of his intent six months after the relevant events.  **See** N.T., 9/24/13, at 16-21.  As noted above, "a statement relating to past events based on memory or belief is not permissible to establish the truth of those events …." **Schmalz**, **supra**. Neither were Vasapolli's statements "instinctive, rather than deliberate," as they were made with the view of enforcing a re-conveyance of the property. N.T., 9/24/13, at 16-21, **see id.**  Accordingly, we conclude the trial court

erred in admitting Ragano's hearsay testimony of Vasapolli's purported intent and plan underlying the June 29, 2004, real estate transaction.[9]

We next address whether this error resulted in harm to Appellants. ***See Kopytin***, ***supra***. The trial court found "a resulting trust was formed for the benefit of Vasapolli," citing section 440 of the Restatement of Trusts. Trial Court Opinion, 1/28/14, at 15. The Restatement provides as follows.

### § 440 General Rule

> Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442 and 444.

RESTATEMENT (SECOND) TRUSTS § 440 (1959).[10]

However, the subject transaction did not involve a gratuitous transfer. Rather, Vasapolli supplied the purchase funds as a loan evidenced by a note and secured by the mortgage. Section 445 of the Restatement provides as follows. "Where a transfer of property is made to one person and the purchase price is advanced by another as a loan to the transferee, no resulting trust arises." ***Id.*** § 445; ***see also Mermon v. Mermon***, 390 A.2d

---

[9] We further note that the statements, as testified to by Ragano, convey only Vasapolli's understanding of his own purpose. Vasapolli did not indicate his intention was communicated to or agreed to by Spagnolo as the basis of an oral agreement.

[10] The trial court determined that the exceptions noted in Sections 441, 442, and 444 did not apply. Trial Court Opinion, 1/28/14, at 15.

796, 799 (Pa. Super. 1978) (finding purchase price of property advanced as a loan precluded finding of resulting trust, citing Section 445).

The trial court additionally relied on Section 404 of the Restatement, which provides as follows. Trial Court Opinion, 1/28/14, at 15.

### § 404 Where Resulting Trust Arises

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

RESTATEMENT (SECOND) TRUSTS § 404 (1959); **see also Galford v. Burkhouse**, 478 A.2d 1328, 1334 (Pa. Super. 1984) (applying Section 404 to determine parties' intent to establish resulting trust). "A resulting trust arises when a person makes a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have a beneficial interest in the property." **Fenderson v. Fenderson**, 685 A.2d 600, 604 (Pa. Super. 1996), *appeal denied*, 698 A.2d 594 (Pa. 1997). "To establish a right to an equitable lien, the evidence [] must be clear, precise and indubitable as to the intention of the parties." **Mermon**, **supra** at 799 (internal quotation marks and citation omitted).

The Statute of Frauds specifically exempts such trusts, implied in law, from its operation. Parole [sic] evidence is, therefore, admissible to show the circumstances under which a resulting trust arose.

- 14 -

> In order to establish, by oral testimony, a resulting trust in real estate against the person holding the legal title the evidence must be clear, explicit and unequivocal or, as it has been otherwise stated, clear, precise and unequivocal or clear, precise and convincing and satisfactory or clear, precise and indubitable.
>
> …
>
> Moreover, while parole [sic] evidence concerning the circumstances surrounding the execution of a deed is admissible to challenge the legal title and establish a resulting trust, such parole [sic] evidence cannot be the basis for an oral express trust[,] which would be violative of the Statute of Frauds.

*Galford*, *supra* at 1333, 1334.

The "circumstances" relied on by the trial court in the instant case was the parties' purported oral agreement. Trial Court Opinion, 1/28/14, at 14. As noted above, the trial court relied heavily on the inadmissible hearsay evidence to make its determination about the substance of the agreement between Spagnolo and Vasapolli, which in turn formed the basis of the trial court's finding that a resulting trust was created. *Id.* at 16. Absent that evidence, it is by no means "clear, explicit and unequivocal" that such a trust existed as required for Ragano to meet his burden of proof. *See Galford*, *supra* at 1333. For these reasons, we are constrained to vacate the June 4, 2014 judgment. We also vacate paragraphs one, two and three of the trial court's January 28, 2014 order pertaining to the action underlying the instant appeal.

Based on the foregoing, we conclude the trial court's finding that a resulting trust was created between Spagnolo and Vasapolli was based on inadmissible hearsay evidence. Accordingly, we vacate the trial court's June 4, 2014 judgment relative to this appeal and remand the case for a new trial or other further proceedings, consistent with this memorandum.[11]

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/2015

---

[11] We recognize that, depending on the outcome on remand, Appellants' remaining issues may become moot or may be confronted again. Because of our disposition of Appellants' first issue, we decline to address them here. We do so without prejudice to either party to revisit the issues before the trial court on remand or in a future appeal if appropriate. We therefore express no opinion on Appellants' remaining issues at this juncture.